CALHOUN ET AL., APPELLANTS, *v.* SUPREME COURT OF OHIO
ET AL., APPELLEES. ■

[Cite as Calhoun v. Supreme Court of Ohio (1978),
61 Ohio App. 2d 1.]

(No. 78AP-177—Decided October 26, 1978.)

*Mr. Crede Calhoun,* prosecuting attorney.

*Mr. Edwin F. Woodle,* for appellant, Cuyahoga County
Bar Association.

*Mr. William J. Brown,* attorney general, and *Mr.*

*Thomas V. Martin,* for appellees, the Supreme Court of Ohio et al.

HOLMES, P. J.   This matter comes before the court on an appeal from a judgment on the pleadings rendered by the Franklin County Court of Common Pleas for defendants the Supreme Court of Ohio and the justices of that court, and for Mr. Thomas Startzman, the clerk of such court. Plaintiffs below, appellants in this court, sought a declaratory judgment on numerous issues relating to the constitutional and statutory power of the defendants to promulgate rules to levy attorney registration fees and to maintain a fund for regulating the practice of law in the state.

The facts in brief giving rise to this action, and to this appeal, are that the Supreme Court of Ohio adopted Rule VII of the Rules for The Government of The Bar (Gov. R. VII), effective October 20, 1975. This rule provides for the registration of all attorneys in the state and for the biennial payment of a registration fee of fifty dollars.

At the time of adopting Gov. R. VII, the Supreme Court also amended Gov. R. V(3). This amendment provides for the creation of the office of disciplinary counsel. The disciplinary counsel aids local bar associations in investigations of alleged misconduct, and also has the responsibility to take over investigations of misconduct which have not been completed within a specified time.

Funds for the compensation of staff and for the operations of the office of disciplinary counsel are provided from the registration fees collected pursuant to Gov. R. VII.

The Supreme Court also adopted Gov. R. VIII, which rule created the Board of Commissioners on the Unauthorized Practice of Law. The rule provides for procedures for processing complaints alleging the unauthorized practice of law. The rule also provides that the expenses incurred by local bar associations in handling the complaints shall be paid from the registration fees collected pursuant to Gov. R. VII.

Plaintiff-appellant Cuyahoga County Bar Association instituted an action in the United States District Court against the defendants in this action, claiming that the rules concerned with herein were unconstitutional. Plaintiff Crede Calhoun, a practicing attorney, was made a party to such ac-

tion. A three-judge court found that the constitutional objections to the rules were without merit, and that the rules were in compliance with provisions of the United States Constitution. The District Court noted that the plaintiffs had alleged that the adoption of the rules was contrary to state law, and found that such was "a pendent claim" which that court had discretion to refuse to consider. Accordingly, the court declined to exercise pendent jurisdiction, and dismissed the action on the basis that the complaint failed to state a claim upon which relief could be granted. The judgment of the District Court was affirmed by the Supreme Court of the United States in *Cuyahoga County Bar Assn.* v. *Supreme Court of Ohio* (1977), 430 U. S. 901.

The plaintiffs Cuyahoga County Bar Association and Crede Calhoun thereafter brought this action in the Franklin County Court of Common Pleas, seeking a declaratory judgment on numerous issues which questioned the constitutional and statutory powers of the defendant Supreme Court of Ohio to levy the aforestated attorney registration fees, and to maintain a fund for regulating the practice of law in the state.

The gravamen of the plaintiffs' complaint is that defendants, in promulgating and enforcing Rules V, VII and VIII of the Rules for The Government of The Bar, have enacted a tax upon attorneys in order to raise public revenue to create a fund to defray expenses of the state; that the defendants have established a state agency, and appointed public officers and employees; that the defendants have appropriated revenue of the state, and have not paid such collected funds into the state treasury, contrary to the requirements of R. C. 131.01 and R. C. 131.07; and, that the defendants have exercised all of these powers absolutely and without limitation.

It is further contended that the exercise of these powers by the defendants violates numerous provisions of the Ohio Constitution and several statutes of the state. Plaintiffs additionally claim that defendants are acting contrary to the provisions of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Subsequent to the filing of the complaint, defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Civ. R. 12 (B) (1). The trial court denied the mo-

tion, holding that R. C. Chapter 2721 conferred jurisdiction upon the court to render a declaratory judgment on the issues raised by the complaint, and rejecting defendants' contention that the Supreme Court's jurisdiction over matters relating to the practice of law is exclusive. In accordance with this ruling, the court instructed defendants to file an answer to the complaint.

Defendants' answer sets forth five defenses. In the first, defendants admit many of the factual allegations of the complaint, but deny plaintiffs' right to a judgment in their favor as a matter of law. The second defense is a reassertion of the earlier contention that the trial court lacks subject matter jurisdiction over the issues raised in the complaint. In their third defense, defendants claim that the federal constitutional issues raised by plaintiffs are barred by the doctrine of *res judicata*. Finally, the fourth and fifth defenses assert that plaintiffs have failed to state a claim upon which relief may be granted.

The issues having been joined by the submission of all pleadings, defendants moved for a judgment on the pleadings under Civ. R. 12 (C). The trial court granted the motion "for the reasons contained in the opinion of the court which was read into the record on February 10, 1978."

The court's opinion, which was incorporated by reference in the judgment entry, holds that the Ohio Supreme Court has the inherent power to promulgate rules regulating the practice of law, and that where these rules conflict with statutes the rules prevail. The court further determined that R. C. 131.01 and R. C. 131.07 do not apply to the attorney registration fees assessed by the Supreme Court. The trial court found that issues of fact remained in the pleadings, but that none of these disputed facts were material to the fundamental issues in the case. On the basis of these holdings, the court concluded that "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for judgment on the pleadings was made."

In the Cuyahoga County Bar Association's first assignment of error it is argued that "[t]he Court erred in attempting to dispose of this action, being an action for a declaratory judgment, by rendering a judgment on the pleadings." It is

urged that a judgment on the pleadings in an action for declaratory judgment has absolutely no legal effect.

Although it is true that an action for declaratory judgment seeks no recovery other than a declaration of the legal rights and relations of the parties, this does not preclude a court from granting a judgment on the pleadings in appropriate circumstances. The cases cited by appellants in this regard are distinguishable.

In *Bruckman* v. *The Bruckman Co.* (1938), 60 Ohio App. 361, cited by appellants, defendant demurred to plaintiff's petition for a declaratory judgment. The trial court dismissed the action for failure to state a cause of action. The judgment was reversed on appeal, the court holding that the dismissal of a declaratory judgment action for failure to state a cause of action is appropriate only where the plaintiff has failed to bring himself within the provisions of the declaratory judgment statutes. The court found that plaintiff had stated a claim under the declaratory judgment provisions of the General Code and therefore was entitled to prevail against the demurrer.

The instant case is distinguishable from *Bruckman,* in that a judgment on the pleadings is generally a decision on the merits, while a dismissal for a failure to state a claim constitutes a finding that the statement of the claim for relief is insufficient on its face. 5 Wright & Miller, Federal Practice and Procedure, Sections 1349, 1367 (1969). The *Bruckman* court seemingly recognized this distinction when it stated, at 362:

"The court in the instant case wrote a very comprehensive and, in our opinion, accurate decision upon the merits of the plaintiff's contention, finding against him. If such findings had been incorporated in a *judgment after proper pleadings,* the rights of the plaintiff in the matter would have been properly considered." (Emphasis added.)

Appellants also cite *Alsop* v. *Heater* (1975), 45 Ohio App. 2d 201, in support of the proposition that a judgment on the pleadings is improper in an action for declaratory judgment. That case, however, merely holds that if a justiciable issue has been raised in a declaratory judgment action, then it is inappropriate to grant a directed verdict without declaring the rights and relations of the parties.

That a judgment on the pleadings is appropriate under certain circumstances in an action for declaratory judgment is apparent from a reading of Civ. R. 57, which states in part:

"The procedure for obtaining a declaratory judgment pursuant to sections 2721.01 to 2721.15, inclusive, of the Revised Code, shall be in accordance with these rules."

We hold that a judgment on the pleadings may be granted pursuant to Civ. R. 12 (C) in an action for a declaratory judgment where there exists no material issue of fact and one party is entitled to a declaration in his favor as a matter of law. See Borchard, Declaratory Judgments 432 (2d ed.1941); 22 American Jurisprudence 2d 958, Declaratory Judgments, Section 93. The Cuyahoga County Bar Association's first assignment of error is hereby dismissed.

In the Bar Association's third assignment of error it is stated:

"The Court erred in undertaking to dispose of this action for a declaratory judgment by a judgment on the pleadings when there are important issues of fact between the parties, the determination of which requires consideration of substantial evidence which the plaintiffs were prevented from presenting."

If it is true, as urged by appellants, that there existed issues of fact material to the disposition of this case, then a judgment on the pleadings was improper, and the cause must be remanded for a trial on the merits. *George C. Frey Ready-Mixed Concrete, Inc.,* v. *Pine Hill Concrete Mix Corp.* (C.A. 2, 1977), 554 F. 2d 551, 553. A determination of this issue requires an examination of the allegations set forth in the complaint.

The allegations constituting the complaint in this action continue at length for some sixteen pages. In the interest of brevity, a detailed discussion of the allegations will be confined to several significant portions of the complaint. Most of the issues raised concern the defendants' rights, under the Ohio Constitution, to assess attorney registration fees, and to maintain a fund for the regulation of the practice of law. Because these issues may be decided by judicial construction of constitutional and statutory provisions, they present issues of law, and are susceptible of summary treatment by the court.

Also the issue of whether R. C. 131.01 and R. C. 131.07 are applicable to the fees collected pursuant to Gov. R.V., and whether such fees must be paid into the state treasury, is also a question of law and could be determined by the trial court upon a motion for a judgment upon the pleadings.

We now turn to the matter of whether the trial court was correct in its determination of the legal issues presented here. Historically, the Supreme Court of Ohio has, through the exercise of its "inherent powers," concerned itself with the matters related to the control of the practice of law. By way of Rule XIV of the Supreme Court Rules of Practice, it provided the procedures for admission to the bar and, as of January 1901, established the board of bar examiners. By Rule of practice XXVII, the Supreme Court, in January 1957, created the board of commissioners on grievances and discipline for the review of complaints of misconduct of attorneys and judges. The work of this board in the furtherance of disbarment, removal, and disciplinary procedures has proceeded to operate in such areas of concern since its creation, and until the adoption of Gov. R. VIII.

The practice of the Supreme Court of adopting rules which imposed assessments within the general area of the control of the practice of law is also well established. Section 6 of Rule XIV, of the Supreme Court Rules of Practice, provided that every law student must file an application for registration as a candidate for admission to the bar and pay a registration fee of ten dollars. Section 12 of those rules provided that every applicant for examination must pay an examination fee of thirty dollars. This requirement of registration and examination fees has been in effect since June 7, 1923.[2]

By case law, it has long been held that the Supreme Court has the "inherent power" to regulate the practice of law in the state. In the case of *In re Thatcher* (1909), 80 Ohio St. 492, the Supreme Court, construing its jurisdiction over disciplinary proceedings involving the disbarment of attorneys, held in the first two paragraphs of the syllabus as follows:

---

[2] These matters are now covered in the Supreme Court Rules for the Government of the Bar of Ohio.

"1. The Supreme Court of Ohio has inherent jurisdiction of proceedings to disbar an attorney, resulting as an incident of its organization as a court, as well as from its power to admit to the bar.

"2. The provisions of Section 563, Revised Statutes, are not an attempted enlargement of the jurisdiction of the several courts therein named, in contravention to the constitution, but are regulative provisions recognizing already existing powers of the courts."

The general principles relative to the Supreme Court's jurisdiction over matters within the practice of law enunciated in *Thatcher* were again reviewed in the case of *In re McBride* (1956), 164 Ohio St. 419, where we find the following in the first two paragraphs of the syllabus:

"1. The power to admit attorneys to the practice of law and to disbar, suspend or otherwise discipline them after admission rests inherently in the judicial branch of the government.

"2. The legislative branch may provide by statute standards and qualifications for admission to the bar and methods for the initiation and conduct of proceedings to disbar, suspend or otherwise discipline attorneys for specified causes, but such legislation is to be interpreted as an aid to and not as a limitation on the power of the judicial branch in these respects.***"

In the same regard as to the Supreme Court's interpretation of its own jurisdiction relative to matters of the practice of law, see *In re Nevius* (1963), 174 Ohio St. 560, and *Cleveland Bar Assn.* v. *Pleasant* (1958), 167 Ohio St. 325.

In Ohio, this inherent power to regulate and define the practice of law has been embodied in the Modern Courts Amendment of 1968, and is found in Section 2 (B) (1) (g), Article IV, of the Ohio Constitution. Within the staff comments relative to such proposed amendment to the Constitution, to be found in the Ohio Legislative Service Commission Staff Research Report, Number 75, entitled Problems of Judicial Administration, we find the following at page 73:

"The court is given authority over admission to the practice of law, the discipline of persons admitted to practice, and over all other matters relating to such practice. While this authority is now exercised by the Supreme Court, the com-

mittee received considerable testimony, both pro and con, as to whether this was part of the inherent power of the court or whether such authority should be conferred by the Constitution. Committee consensus was that it should be so included."

The rules questioned herein followed the passage of the Modern Courts Amendment to the Ohio Constitution, such rules being deemed necessary by many within the legal profession in order to aid and improve the procedures for professional discipline, with the aim of achieving the highest possible professional conduct, and to protect the public from unethical conduct. The determination to assess a fee against all attorneys in the state was based on the recognized need to obtain the services of a professional staff to investigate complaints of misconduct throughout the state. Prior to the present rules, the investigations were conducted by practicing attorneys throughout Ohio who, through their dedicated and sincere service, involved themselves in many, many hours of investigation and report drafting in these disciplinary cases. The need for a professional staff to relieve practicing attorneys of such responsibility was well documented.

While there is no case law from this state addressing the issue of the Supreme Court's power to raise and maintain a fund for the purpose of regulating the practice of law, such funds have been upheld in other jurisdictions on the basis that they are necessary incidents to a court's inherent power to regulate the bar. *Petition of Florida State Bar Assn.* (Fla. 1949), 40 So. 2d 902. Also see *Ayres* v. *Hadaway* (1942), 303 Mich. 589, 6 N.W. 2d 905; *In re Washington State Bar Assn.* (1976), 86 Wash. 2d 624, 548 P. 2d 310.

In the case of *Petition of Florida State Bar Assn., supra,* the court, among other issues, considered whether the power to "integrate" or to uniformly register all members of the bar of the state of Florida carried with it the power to impose a membership fee for the support of bar integration activities. The court, in answer to such issue, stated as follows within its opinion, at 906:

"A membership fee in the bar association is an exaction for regulation only, while the purpose of the tax is revenue. In City of Jacksonville, v. Ledwith, 26 Fla. 163, 7 So. 885, 9 L.R.A. 69, 23 Am. St. Rep. 558, this distinction was recognized. It was also recognized in United States v. Butler, 297

U. S. 1, 56 S. Ct. 312, 80 L. Ed. 477, 102 A.L.R. 914. These cases also recognize the rule that the power to regulate may carry with it the imposition of a charge for that purpose. If the judiciary has inherent power to regulate the bar, it follows that as an incident to regulation it may impose a membership fee for that purpose. It would not be possible to put on an integrated bar program without means to defray the expense. We think the doctrine of implied powers necessarily carries with it the power to impose such an exaction."

We are in agreement with the Florida Supreme Court and other courts which have held that the jurisdiction or power of a court over matters relating to the practice of law, inclusive of admission to the bar, investigations of claims of unethical practice and disciplinary actions including disbarment, includes, by reasonable necessity, the authority to do those things necessary or attendant to the appropriate carrying out of such general powers, including the power to impose a membership fee for the support of such related activities.

Generally speaking, those powers which are necessary to the convenient and efficient exercise of its functions are said to be inherent in a court. *State, ex rel. McKean,* v. *Graves* (1914), 91 Ohio St. 23; also see *Hale* v. *State* (1896), 55 Ohio St. 210. A court may act in a manner reasonably calculated to achieve a valid stated purpose, the purpose being valid so long as necessary to the convenient and efficient exercise of its functions.

The context in which the term "jurisdiction" is used in Section 2 (B) (1), Article IV, of the Constitution, the legislative history of that provision, and the conditions existing at the time of its adoption, clearly establish that the framers and adopters of this section used the term "jurisdiction" in the sense of power or authority vested in the Supreme Court over matters relating to the practice of law, and intended to clarify and codify the inherent authority of the Supreme Court over all such matters relating to the practice of law in this state.

The plaintiffs in the trial court below, and also upon this appeal, argue that even though the rules might be held to be unconstitutional, the Supreme Court is required, pursuant to

R. C. Chapter 131, to deposit registration fees in the state treasury payable to the general fund of the state. We hold that the trial court properly rejected this claim as the trial court explained in its decision that if the court had construed the statutes to require the registration fees to be paid into the state treasury, the court would have been compelled to find the statutes invalid.

Matters concerning the practice of law are judicial in nature and primarily under the control of the judicial branch of the government. The General Assembly may enact statutes concerning such matters, but they have been interpreted as aids or guides to the judiciary. Such statutes are subservient to any rule adopted by the Supreme Court. *In re Nevius, supra.* In this discussional vein, we cite the case of *Sharood v. Hatfield* (1973), 296 Minn. 416, 210 N.W. 2d 275. The facts in that case show that the Minnesota legislature passed a statute which directed that registration fees to practice law provided for by court order should be directed to the general revenue fund of the state, and left to legislative discretion the matter of an appropriation to the Supreme Court for purpose of regulating the practice of law. The court rejected this attempted assertion of power by the legislature, holding the provisions regulating the practice of law a constitutionally impermissible assumption of judicial power. It noted that the doctrine of separation of powers "not only prevents an assumption by either department of power not properly belonging to it, but also prohibits the imposition, by one, of any duty upon either of the others not within the scope of its jurisdiction."

We hold that the trial court here properly held that R. C. Chapter 131 is not applicable to the collection of registration fees for the practice of law in Ohio, and the trial court properly did not construe R. C. 131.01 and R. C. 131.07 as being unconstitutional, and correctly applied the statutory interpretation which holds that where a statute is susceptible of two interpretations, one of which would render it constitutional and the other unconstitutional, the court is required to choose the interpretation which will preserve its validity. *United Air Lines* v. *Porterfield* (1971), 28 Ohio St. 2d 97; *Cincinnati* v. *De Golyer* (1971), 25 Ohio St. 2d 101.

As to any allegations or claims as contained in plaintiffs'

complaint relating to any violation of the United States Constitution, we hold that such issues had been previously litigated in the federal courts in the case of *Cuyahoga County Bar Assn.* v. *Supreme Court of Ohio.* The plaintiffs are precluded by the doctrine of *res judicata* from relitigating in this action any claim which was litigated, or could have been litigated, in the federal court, and this would include any issues raised and litigated as to the validity of the rules under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

We also hold that the claims that plaintiffs' due process and equal protection rights under the Ohio Constitution were violated are without merit. The requirements of equal protection and due process of law in the Ohio Constitution are in essence the same as those to be found in the United States Constitution. *State, ex rel. Struble,* v. *Davis,* (1937), 132 Ohio St. 555, and *In re Appropriation of Easements* (1957), 104 Ohio App. 243. We hold that no such rights of these plaintiffs have been violated by the rules in question.

In the instant case, the trial court in ruling upon the motion for a judgment on the pleadings spoke to the legal issue of the exercise of authority by the Supreme Court in promulgating rules relative to the regulation of the practice of law. The trial court pointed out that the Supreme Court had previously spoken to such issue in the case of *In re Nevius, supra.* As stated previously, the trial court also ruled on the issue of whether the fees collected pursuant to Gov. R. V need be deposited in the state treasury, pursuant to R. C. 131.01 and R. C. 131.07. The trial court correctly held that such funds need not be so deposited.

The trial court in its decision on the motion to dismiss quite correctly determined that Section 2 (B) (1) (g), Article IV, does not confer original *and exclusive* jurisdiction in the Supreme Court in *all* matters relating to the practice of law. We agree with Judge Craig Wrights' statement, as follows:

"* * *[It] is true that the grant of original jurisdiction contained therein is couched in broad terms and on its face appears unrestricted. Yet, this court is of the opinion that where actions taken pursuant to the grant are in direct conflict with other constitutional provisions they must be said to be improper."

We are in agreement with the trial court in this regard and believe that our court system should remain open to our citizens to test the lawfulness of the acts of any one of our three branches of government—the executive, legislative, or judiciary. Here, it is our view that if the complaint had alleged certain facts such as the collection of an unreasonable and unwarranted registration fee, or a misuse or misappropriation of the collected funds, or had alleged other acts by the commission or its staff which were deemed to be unlawful, unconstitutional or unreasonable, such allegations would entail the necessary submission of evidence and would require a determination upon such facts. In any such instance, the merits of the matter could not have been decided upon a motion for a judgment on the pleadings as was done here.

However, the complaint here does not specifically allege that the annual fee of twenty-five dollars is unreasonable or unwarranted, or that there is any unlawful or unreasonable use of the fees collected, or any unlawful acts being committed by the commission or its staff. An overall reading of the complaint leads us to the conclusion that all of the allegations are not such that would require the court to entertain a presentation of evidence in relation to such allegations, and that the court properly determined that it could decide the motion for a judgment on the pleadings on the questions of law presented to the court.

We hold that the trial court was correct in finding that plaintiffs failed to show that any of the challenged rules were clearly incompatible with any Ohio constitutional provision.

We further hold that the trial court was correct in determining that the Supreme Court of Ohio had authority under Section 2 (B) (1) (g), Article IV, of the Ohio Constitution, to promulgate the rules in question in this action.

Based upon all of the foregoing, the assignment of error of appellant Crede Calhoun is hereby overruled, and all of the assignments of error of appellant Cuyahoga County Bar Association are overruled.

*Judgment affirmed.*

REILLY and McCORMAC, JJ., concur.