STATE *ex rel.* WOODIE FRIESON

*v.*

ROBERT A. ISNER, *Magistrate,*

*et. al.*

(No. 15109)

Decided December 18, 1981.

*Charles R. Garten* for relator.

No appearance for respondents.

*W. Va. State Bar by Robert H. Davis, Jr.*, amicus curiae.

*Associated Collection Agencies of W. Va. and its President Ross A. White, by George P. Sovick, Jr.*, amicus curiae.

McGRAW, JUSTICE:

The petitioner, Woodie Frieson, seeks a writ of prohibition under the original jurisdiction of this Court to restrain enforcement of a judgment entered against him in the Magistrate Court of Boone County. The petitioner contends that the magistrate court acted outside the scope of its jurisdiction in entering a default judgment in favor of South Charleston Adjustment Bureau, Inc., for the recovery of debts owed by the petitioner to various creditors. The petitioner also contends that South Charleston Adjustment Bureau was engaging in the unauthorized practice of law by asserting the claims of the petitioner's creditors in the magistrate court. We find merit in these contentions and we award a moulded writ.

The petitioner, Woody Frieson, lives in Sang Creek, Boone County, with his wife and six children. He is em-

ployed by the Department of Highways and earns $690 per month. South Charleston Adjustment Bureau, Inc., is a West Virginia corporation engaged in the business of collecting debts. In October 1980, the collection agency filed a complaint in the Magistrate Court of Boone County, seeking to recover three separate debts owed by the petitioner to Charleston Area Medical Center, Inc., C & P Telephone Co., Inc., and Associated Radiologists, Inc., respectively. The complaint consolidated these three unpaid accounts into a single claim for a total amount of $434.14, of which $386.73 represented the total amount of principal due, $34.41 represented the total amount of accrued interest, and $13.00 represented court costs. The complaint did not set forth separately the amount of each original debt or the amount of interest owing on each. The complaint was prepared and filed by the manager of South Charleston Adjustment Bureau, a non-lawyer, and neither of the parties was represented by counsel in the proceedings below. The petitioner did not respond to the complaint, and a default judgment was entered against him and garnishment proceedings were commenced.

The petitioner contends that because the complaint filed by South Charleston Adjustment Bureau did not set forth separately the amount of each of the original claims of his creditors, it is not a proper statement of the nature of the cause of action, and, thus, an insufficient pleading to invoke the jurisdiction of the magistrate court under the provisions of W. Va. Code § 50-4-1 (1980 Replacement Vol.). The petitioner also contends that South Charleston Adjustment Bureau engaged in the unauthorized practice of law in that it instituted legal proceedings and appeared in magistrate court to prosecute the claims of the petitioner's creditors. Upon proper motion, we granted leave to the West Virginia State Bar and to the Associated Collection Agencies of West Virginia to file briefs as *amici curiae*.

I

We will first address the issue of whether the failure of South Charleston Adjustment Bureau to itemize in the

complaint the amount of principal and interest due each of the petitioner's creditors invalidated the proceedings in the magistrate court.

W. Va. Code § 50-4-1 (1980 Replacement Vol.) states that civil actions in magistrate court shall be commenced by the payment of the required fees and providing the magistrate court clerk, magistrate deputy clerk, or magistrate assistant with specific, detailed information as to the nature of the cause of action. In the case of a commercial creditor

> the statement [of the nature of the cause of action] shall include, but not be limited to, *a setting forth of the amount of the original obligation, the portion thereof which constitutes principal, the portion thereof which represents interest, the date and amount of payments thereon, the amount, if any, credited for the sale of repossessed collateral, and the amount alleged to be due* ..." (Emphasis added). *Code* 50-4-1.

The obvious intent of this provision is to insure the fundamental concept of due process that a defendant in any such action shall have proper notice of the nature of the claim against him. By requiring that the complaint set forth a detailed description of the amount originally owed, the amount alleged to be due, and the amount of any payments or credits to the account, the statute anticipates that the statement of the nature of the cause of action will provide the defendant with sufficient information to enable him to understand the specific nature of the claim against him and to present any defenses which he might have.

The complaint filed by South Charleston Adjustment Bureau does not fulfill the requirements of the statute. It does not state the amount of the original debt on any of the three unrelated claims against the petitioner. It does not state the amount of principal and the amount of interest due on each claim. Rather, the complaint consolidates all three accounts into one claim for a total amount alleged to be due, broken down into a total amount of

principal due and a total amount of interest accrued, plus court costs, on "[u]npaid account for Charleston Area Medical Center, Inc., C & P Telephone and Associated Radiologists."

The complaint here did not adequately inform the petitioner of the nature of the separate, unrelated claims against him. Indeed the consolidation of the three overdue accounts into one lump sum claim for recovery appears to foster exactly the sort of confusion and ambiguity that the statute is intended to avoid. The defendant has no way of discerning from the complaint whether the claims of the complainant are bona fide debts or whether his account has been credited with any payments previously made. Any specific legitimate defense he may have cannot be ascertained from the facts stated in the complaint. For example, the petitioner here alleges that two of the claims against him were to be paid by his insurance company and that he was unable to determine from the facts stated in the complaint the amount due on those claims and what payments, if any, had been made by the insurance company.

Such a situation demonstrates that the failure to plead specifically the nature of the cause of action is almost always to the disadvantage of the debtor, who may be unable to determine from insufficient allegations the appropriate course to take in his defense. The statutory procedures for magistrate courts are designed to eliminate such difficulties for the layman and to provide a fair and relatively informal forum for the resolution of disputes consistent with the principles of due process. The failure of either party to follow these rather simple procedures can cause complexities which act to the unfair disadvantage of the other. We conclude, therefore, that under the provisions of W. Va. Code § 50-4-1, which sets forth the requirements for filing a complaint by a commercial creditor to recover debts owed by the defendant, it is improper for the creditor to bring an action to recover on several separate and distinct accounts by consolidating them into one claim. The creditor must set forth in the

complaint the amount of each original obligation, including which parts of that amount represent the principal and the interest, the amount and date of any payment or credit to each separate account and the amount alleged to be due on each account.

The Associated Collection Agencies of West Virginia assert in their *amicus curiae* brief that it is standard procedure for collection agencies to correspond with people in Mr. Frieson's position before any legal action is taken, indicating to them the name of the creditor, the amount due, and the date on which the debt was incurred. Such communications are required by statute to be made to the debtor by collection agencies in order to protect the debtor from unjust or improper debt collection practices. *See* 15 U.S.C. § 1692 *et seq.*; W. Va. Code 46-16-1 *et seq.*; W. Va. Code § 46A-1-101 *et seq.* Thus, the association argues, the petitioner here had actual notice of the nature of the claims against him. We do not think that the purported common practice of a collection agency to comply with consumer credit and protection provisions of state and federal law satisfies the statutory requirement that the complaint itself shall inform the defendant of the nature of the legal action being instituted against him. The collection agency cannot substitute a specious presumption arising from its obligation to comply with these provisions of the law for its duty to comply with proper statutory pleading provisions.

As a final matter, the Associated Collection Agencies of West Virginia contend that even if the allegations contained in the complaint were insufficient to give the petitioner notice of the nature of the cause of action against him, he would have been able to clear up any confusion and preserve his defenses by filing an answer within the statutory time period. This argument misses mark. Under concepts of due process so fundamental as not to require elucidation, the defendant in a civil action instituted in magistrate court is entitled to be apprised from the outset of the nature of the claim against him with such definiteness that a person of reasonable intelli-

gence is able to understand the allegations and respond to the complaint. A magistrate court complaint, filed by one with whom the defendant has never done business, which seeks recovery of amounts due several of the defendant's creditors and which does not set forth specific and detailed allegations of fact which clearly and definitely inform the defendant of the specific nature of each separate overdue account, does not satisfy the notice requirements of due process. The complaint therefore was not sufficient to invoke the jurisdiction of the magistrate court, and any proceedings had subsequent to the filing of it were of no legal effect. Consequently we hold that the failure of the complaint below to set forth the specific amounts alleged to be due each of the original creditors by the petitioner as required by statute rendered void the subsequent proceedings of the Magistrate Court of Boone County.

## II

The petitioner also contends that the appearance in magistrate court of South Charleston Adjustment Bureau, a lay collection agency, by its manager, a non-lawyer, constituted the unauthorized practice of law. The petitioner argues that W. Va. Code § 50-4-4a (1980 Replacement Vol.), which authorizes parties to civil actions in magistrate court to appear by non-lawyer agent, is unconstitutional as a legislative usurpation of this Court's power to define and regulate the practice of law.

We turn first to the question of whether South Charleston Adjustment Bureau was in fact engaging in the unauthorized practice of law when it filed the complaint and appeared in magistrate court to prosecute the claims of the petitioner's creditors. Our state constitution provides that this Court has "the power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, *process[,] practice and procedure*, which shall have the force and effect of law." (Emphasis added.) W. Va. Const. art. 8, § 3. This constitutional provision vests in this Court the

indisputable and exclusive authority to define, regulate and control the practice of law in West Virginia. *Stern Bros. Inc. v. McClure*, 160 W. Va. 567, 236 S.E.2d 222 (1977).[1]

---

[1] Practice immemorial has been that courts admit to practice and it has been such a constant occurrence that it has caused courts to claim regulation of the practice of law as their inherent right, just as constant genuflection in his presence caused the Pharoah to claim deity, *West Virginia Judicial Inquiry Commission v. Allamong*, ____ W. Va. ____, 252 S.E.2d 159 (1979); *State ex rel. Partain v. Oakley*, 159 W. Va. 805, 227 S.E.2d 314 (1976); *In re Daniel*, 153 W. Va. 839, 173 S.E.2d 153 (1970); *West Virginia State Bar v. Earley*, 144 W. Va. 504, 109 S.E.2d 420 (1959); *In re Eary*, 134 W. Va. 204, 58 S.E.2d 647 (1950); *In re Application for License to Practice Law*, 67 W. Va. 213, 67 S.E. 597 (1910), although it was not until *In re Mosness*, 39 Wis. 509, 20 Am. Rep. 55 (1876), that American courts began to claim the power to control the practice of law as being inherent in their function. The justification of this claim of inherent power has been based on a two-pronged argument: first, that the power is judicial because it is usually exercised by courts and, second, that historically courts have decided that the exercise of the power is necessary for their existence and independence.

In the English tradition, control over the bar became vested in the courts by improvisation rather than by design. Courts were the sole determiners of who would appear before them as attorneys, that is, as agents for others and officers of the court. In 1292, Edward I directed the judges of the Common Bench to select approximately 140 men to follow the court, leaving the exact number to their good judgment. Degnan, *Admission to the Bar and the Separation of Powers*, 7 Utah L. Rev. 82 (1961). In 1403, judges were instructed to examine all attorneys and appoint only qualified men to appear before them, while those guilty of improper conduct were disqualified. 4 Hen. IV C.18. Similar provisions for the delegation of the power to discipline and admit to practice were made throughout English judicial history. *See* 33 Hen. VI C.7 (1455); 3 Jac. I C. 7 (1606); 2 Geo. II C.23 (1729). During this period, orders were also made by the Court of Common Pleas governing the conduct of attorneys. *Praxis Utriusque Banci 26*, cited in *Degnan, supra*. Barristers on the other hand, not being officers of the court, were regulated only indirectly through customary societies, Lincoln's Inn, The Inner Temple, The Middle Temple and Gray's Inn, known collectively as the Inns of Court, the origins of which are lost in history. *King v. Benchers of Gray's Inn*, 1 Dougl. 354, 99 E.R. 227 (K.B. 1780). The Inns were subject to the control of judges or sergeants-at-law (*serviens ad legem*). 3 *Halsbury* 1101. The growth and authority of the Inns of Court resulted from the rules of the judges who provided for admission to practice and the course of study. *Legislative or Judicial Control of Attorneys*, 8 Fordham L. Rev. 103 (1939).

Although it is generally recognized that it is extremely difficult to formulate a comprehensive definition of the practice of law, *West Virginia State Bar v. Earley*, 144 W. Va. 504, 109 S.E.2d 420 (1959), this Court in the exercise of its constitutionally granted power to promulgate rules

---

It is reasonable to conclude, from an examination of the historical records, that for more than six hundred years it has been the practice of the courts to admit attorneys upon their own examination, and that at the time the Colonies separated from the mother country the power of examination and admission of attorneys was vested in the courts. Lee, *The Courts and Admission to the Bar*, 13 Harv. L. Rev. 233, 245 (1899).

American courts adopted the customary practice of the English judiciary in exercising control over the practice of law. The traditional power began to be interpreted as inherent in the judiciary based on immemorial custom and what the courts interpreted as the practical necessities of the trichotomous separation of powers. The constitutional division of powers was not part of the English constitution, making the English judiciary's traditional control over the bar to be of limited relevance in this country. On this basis the American courts claimed that matters naturally within the orbit of a particular department of government were inherently subject to the authority of that department unless limited by the existence of a similar power in another department or by express constitutional provision. *In re Integration of Nebraska State Bar Ass'n*, 113 Neb. 283, 275 N.W. 265, 114 A.L.R. 151 (1937). Thus, historical tradition decided that the power to regulate the practice of law was one naturally within the orbit of the judiciary as necessary to its survival and therefore an inherent power. *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 162 N.E. 487, 60 A.L.R. 851 (1928); *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex. 1979).

The failure of the courts to substantiate their claim that the affirmative power to prescribe standards for admission to practice is indispensible to the proper exercise of the judicial office is probably attributable to a failure to distinguish what is an historical and probably salutary practice from a mandate of the constitution. *Degnan, supra* at 94.

The great weight of modern authority has interpreted this traditional judicial power as being inherent in the judicial branch by the very fact of its being judicial and an essential to the maintenance of the dignity, independence and integrity of the courts. *See, e.g., Petition of the Florida State Bar Ass'n*, 40 So.2d 902 (Fla. 1949); *Public Service Comm'n v. Hahn Transport Inc.*, 253 Md. 571, 253 A.2d 845, 852 (1969); *In re Patton*, 86 N.M. 52, 519 P.2d 288, 290 (1974); *Calhoun v. Supreme Court of Ohio*, 61 Ohio App.2d 1, 15 Ohio Op.3d 13, 399 N.E.2d 559 (1978); *State ex rel. McKean v. Graves*, 91 Ohio St. 23, 109 N.E. 528 (1914).

regulating the practice of law, has formulated a general definition of the practice of law.

> In general, one is deemed to be practicing law whenever he or it furnishes to another advice or service under circumstances which imply the possession of [or] use of legal knowledge and skill.

> More specifically but without purporting to formulate a precise and completely comprehensive definition of the practice of law or to prescribe limits to the scope of that activity, one is deemed to be practicing law whenever (1) one undertakes, with or without compensation and whether or not in connection with another activity, to advise another in any matter involving the application of legal principles to facts, purposes or desires; (2) one undertakes, with or without compensation and whether or not in connection with another activity, to prepare for another legal instruments of any character; or (3) one undertakes, with or without compensation and whether or not in connection with another activity, to represent the interest of another before any judicial tribunal or officer, or to represent the interest of another before any executive or administrative tribunal, agency or officer otherwise than in the presentation of facts, figures or factual conclusions as distinguished from legal conclusions in respect to such facts and figures.

*Definition of the Practice of Law,* as amended in 1961, Vol. 1, W.Va. Code at 569-570 (1978 Replacement Vol.).

This definition of the practice of law is in accordance with the case law of most jurisdictions which have attempted to define the term.[2] *See, e.g., People ex rel. Illinois*

---

[2] Arriving at a concise definition of what constitutes the practice of law has proven difficult for most courts. Many courts have declined to formulate a definition at all, claiming it to be an exercise in the pursuit of the definitional Holy Grail. *State v. Indiana Real Estate Ass'n Inc.,* 244 Ind. 214, 191 N.E.2d 711 (1963). Some jurisdictions have suggested that the term "practice of law" has acquired such universal usage and meaning in the English language so as to neither permit nor require definition. *McMillen v. McCahan,* 83 Abs. 1, 14 Ohio

*State Bar Ass'n v. People's Stock Yards State Bank,* 344 Ill. 462, 176 N.E. 901 (1931); *Eley v. Miller,* 7 Ind. App. 529, 34 N.E. 836 (1893); *Opinion of the Justices,* 289 Mass. 607, 194 N.E. 313 (1935); *In re Duncan,* 83 S.C. 186, 65 S.E. 210 (1909); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). These decisions stress that the practice of law is not limited to the conduct of cases before courts, but also includes services rendered outside court such as

> the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law.

Op.2d 221, 167 N.E.2d 541 (1960); *R. J. Edwards Inc. v. Hert,* 504 P.2d 407 (Okla. 1972). The suggestion from these decisions is that the meaning of the practice of law is so self-evident as to defy definition and that an attempted definition may prove to be counterproductive. *Creekmore v. Izard,* 236 Ark. 558, 367 S.W.2d 419 (1963); *Denver Bar Ass'n v. Public Utilities Comm,* 154 Colo. 273, 391 P.2d 467, 13 A.L.R.3d 799 (1964); *People ex rel. Chicago Bar Ass'n v. Barasch,* 406 Ill. 253, 94 N.E.2d 148 (1950); *State v. Childe,* 139 Neb. 91, 295 N.W. 381 (1914).

Some courts have suggested that statutes which forbid the unauthorized practice of law define and include acts which are commonly understood to be the practice of law. *People v. Merchant's Protective Corp.,* 189 Cal. 531, 209 P.363 (1922). Other courts have held the practice of law to embrace all those acts commonly understood to be the business of lawyers. *State Bar of Arizona v. Land Title and Trust Co.,* 90 Ariz. 76, 366 P.2d 1 (1961); *Grievance Committee of Bar of Fairfield County v. Davey,* 154 Conn. 129, 222 A.2d 339, 22 A.L.R.3d 1092 (1966); *State v. Merchants' Credit Service,* 104 Mont. 76, 66 P.2d 337 (1937); *People v. Alfani,* 227 N.Y. 334, 125 N.E. 671 (1919). Still other courts have entered into what has been referred to as the "wilderness of single instances," 83 U. Pa. L. Rev. 357 (1935), suggesting that the determination of the issue cannot depend on the logical application of a given definition to a set of facts but depends entirely on each factual situation. *Automobile Club of Missouri v. Hoffmeister,* 338 S.W.2d 348 (Mo. App. 1960); *State v. Childe, supra; Sparkman v. State Board of Bar Examiners,* 77 N.M. 551, 425 P.2d 313 (1967); *State ex rel. Junior Ass'n of Milwaukee Bar v. Rice,* 236 Wis. 38, 294 N.W. 550 (1940).

*West Virginia State Bar v. Earley,* 144 W. Va. at 520, 109 S.E.2d at 431. *See also, People ex rel. Illinois State Bar Ass'n v. People's Stock Yards Bank, supra; In re Duncan, supra.*

In order to protect the public from being advised and represented in legal matters by unqualified and undisciplined persons over whom the courts could exercise little, if any, control, only duly-licensed persons meeting the qualifications for admission to the bar established by this Court are permitted to practice law in this State. *Definition of the Practice of Law, supra; West Virginia State Bar v. Earley supra.* Persons not licensed as attorneys who engage in the practice of law may be enjoined from continuing such activities, *West Virginia State Bar v. Earley, supra,* or subjected to criminal penalties. W. Va. Code § 30-2-4 (1980 Replacement Vol.).[3]

Collection agencies are closely regulated by the State. The Collection Agency Act of 1973, W. Va. Code § 47-16-1 *et seq.,* (1980 Replacement Vol.), and the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.,* (1980 Replacement Vol.) set forth strict requirements for the conduct of any debt collection business and place restrictions on debt collection practices. W. Va. Code § 46A-2-123 expressly forbids collection agencies from engaging in the practice of law.[4]

---

[3] Other jurisdictions have held that the unauthorized practice of law by unlicensed persons may be punished as being in contempt of court. *See generally* 7 Am. Jur. 2d *Attorneys at Law* § 117 (1980); 7 C.J.S. *Attorney and Client* § 16 (1972).

[4] W. Va. Code § 46A-2-123:
Unless a licensed attorney in this State, no debt collector shall engage in conduct deemed the practice of law. Without limiting the general application of the foregoing, the following conduct is deemed the practice of law:
(a) The performance of legal services, furnishing of legal advice or false representation, direct or by implication, that any person is an attorney;
(b) Any communication with consumers in the name of an attorney or upon stationery or other written matter bearing an attorney's name; and

The operation of a collection agency, in and of itself, does not constitute the unauthorized practice of law. *J. H. Marshall & Associates Inc. v. Burleson,* 313 A.2d 587 (App. D.C. 1973); *American Auto Ass'n v. Merrick,* 73 App. D.C. 151, 117 F.2d 23 (1940); *Depew v. Wichita Ass'n of Credit Men,* 142 Kan. 403, 49 P.2d 1041 (1935), *cert. denied* 297 U.S. 710, 56 S.Ct. 574, 80 L.Ed. 997 (1936); *State ex rel. McKittrick v. C. S. Dudley & Co.,* 340 Mo. 852, 102 S.W.2d 895, *cert. denied* 302 U.S. 693, 58 S.Ct. 12, 82 L.Ed. 535 (1937). Where, however, a person, association or corporation which collects debts as a regular business attempts to enforce the claims of others by resort to legal proceedings, the debt collector is extending his or its business to include legal representation of creditors. The collection agency is holding itself out not only as an entity which will collect amounts owed to creditors but also as an agent which will render legal services in order to recover debts. It sells its services as a representative in legal actions as part and parcel of its debt collection business. Such activity can be viewed in no other light than as the unauthorized practice of law.

Here, South Charleston Adjustment Bureau, a lay agency appeared in magistrate court on behalf of the petitioner's creditors in the person of the agency's manager, a non-lawyer. It prepared and filed a complaint to institute legal proceedings and took judgment on the claims. Under our definition of the practice of law such services must be deemed to be legal services. The agency rendered these legal services to the petitioner's creditors as a part of its regular collection business. The conclusion that South Charleston Adjustment Bureau was engaged in the unauthorized practice of law is inescapable. We hold therefore that a non-lawyer debt collector who undertakes, for pay, to bring lawsuits on the claims of third persons and to perform the necessary legal services incident to such lawsuit, such as preparing and filing complaints, affidavits and other legal documents, and appear-

---

(c) Any demand for or payment of money constituting a share of compensation for services performed or to be performed by an attorney in collecting a claim.

ing in court, is engaged in the unauthorized practice of law.[5]

The Associated Collection Agencies of West Virginia suggest in their *amicus curiae* brief, however, that South Charleston Adjustment Bureau was not rendering legal services to the petitioner's creditors as a part of its debt collection business, but rather had obtained an assignment of the claims from the creditors and was asserting its own claim. Although the record discloses no assignment, the association argues that the fact that South Charleston Adjustment Bureau instituted proceedings in magistrate court in its own name indicates that the petitioner's creditors assigned their claims to the agency. The association argues that because the collection agency is asserting its own claim as assignee rather than acting as a representative of the creditor-assignor, it does not violate the prohibition against laymen engaging in the unauthorized practice of law.

Generally an unsettled account or debt due is a chose in action which is assignable, and by virtue of statute the assignee may sue in his own name to recover the debt. W. Va. Code § 55-8-9 (1981 Replacement Vol.); *Cook v. Eastern Gas & Fuel Associates*, 129 W. Va. 146, 39 S.E.2d 321 (1946); *Hartman v. Corpening*, 116 W. Va. 31, 178 S.E. 430 (1935); *Wilt v. Huffman*, 46 W. Va. 473, 33 S.E. 279 (1899); *Bentley v. Standard Fire Ins. Co.*, 40 W. Va. 729, 23 S.E. 584 (1895). The assignment passes equitable title to the assignee, the legal title remaining in the assignor. *Cook v. Eastern Gas & Fuel Associates*, *supra*; *Hines v. Fulton*, 92 W. Va. 204, 114 S.E. 684 (1922); *Bentley v. Standard Fire Ins. Co.*, *supra*; *Thomas v. Linn*, 40 W. Va. 122, 20 S.E. 878 (1894). An action brought by an assignee to recover from

---

[5] We note that the briefs of the parties direct our attention to a purported rule of this Court which they contend sanctions the appearance in magistrate court of lay collection agencies by non-lawyer agents in certain circumstances. The language cited by the parties, though originally proposed to the Court as a rule governing the representation of corporations in magistrate court, was never adopted. Therefore, the reliance of the parties upon this language is misplaced.

the debtor cannot be defended on the ground that the assignment was made solely for the purpose of collecting the debt. *Siever v. Klots Throwing Co. of West Virginia*, 101 W. Va. 457, 132 S.E. 882 (1926); *Price v. Moran*, 99 W. Va. 498, 129 S.E. 472 (1925).

Where, however, a collection agency takes an assignment of a creditor's claim solely for the purpose of enabling the agency to maintain suit thereon, numerous jurisdictions have held that the fact that the collection agency, as assignee, is the real party in interest by virtue of the assignment and entitled to maintain suit in its own name is not determinative of the question of whether in so doing the collection agency is engaging in the practice of law. *J. H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587 (App. D.C. 1973); *Bump v. Barnett*, 235 Iowa 308, 16 N.W.2d 579 (1944); *Bay County Bar Ass'n v. Finance System, Inc.*, 345 Mich 434, 76 N.W.2d 23 (1956); *Nelson v. Smith*, 107 Utah 382, 154 P.2d 634 (1944); *State ex rel. State Bar of Wisconsin v. Bonded Collections, Inc.*, 36 Wis. 2d 643, 154 N.W.2d 250 (1967). Typically, the assignment is obtained by the collection agency as part of an agreement or contract with the creditor whereby the collection agency promises to collect the claims of the creditor by resort to legal proceedings if necessary, to pay all court costs and to furnish all legal services. In exchange for this service, the creditor assigns the claim to the collection agency and receives the proceeds of any recovery had by the collection agency as a result of the lawsuit, with a fixed percentage retained by the collection agency as compensation for its services, and perhaps for costs. *People v. Securities Discount Corp.*, 361 Ill. 551, 198 N.E. 681 (1935); *Bump v. Barnett, supra*; *Bay County Bar Ass'n v. Finance System, Inc., supra*; *State v. James Sanford Agency*, 167 Tenn. 339, 68 S.W.2d 895 (1934); *Nelson v. Smith, supra*. In such instances the assignment has been held to be a sham or fraud perpetrated upon the court to allow the collection agency to avoid the prohibition on the unauthorized practice of law. *People v. Securities Discount Corp., Inc., supra*; *State v. James Sanford Agency, supra*; *State v. Bonded Collections Inc., supra*.

In the often cited case of *Nelson v. Smith*, 107 Utah 382, 154 P.2d 634 (1944), for example, the Utah court reversed the lower court's dismissal of a complaint brought by members of the Utah State Bar to enjoin a collection agency and its non-lawyer manager from preparing legal documents and appearing in city courts in its own name as assignee of creditors' claims. In explaining why the collection agency was not entitled to bring lawsuits and appear *pro se* as assignee, the court stated:

> When the defendants solicit the placement of claims with them for collection, they are asking third parties to allow them to render the service of collecting the claim. At that time the collection agency has absolutely no interest, either legal or beneficial, in the claim. The only interest they ever get comes by virtue of a promise to prosecute the claim. Courts cannot remain blind to the fact that the assignment of the claim to the defendants for collection is not made as a gratuity. The percentage of the amount collected which is allowed to the defendants is given to them for one purpose only; to compensate them for services rendered in the collection thereof. Where the collection practice involves the preparing of legal papers, furnishing legal advice and other legal services, the compensation allowed must be assumed to be in part allowed to pay for the legal services so rendered. No matter how one looks at it, this constitutes the rendering of legal services for others as a regular part of a business carried on for financial gain. This essential fact cannot be hidden by the subterfuge of an assignment. The assignment itself, if used to permit this practice, is for an illegal purpose and one proceeding under such an assignment is not protected by the [Utah state] constitutional provision giving one the right to appear for the purpose of prosecuting or defending a cause to which he is a party. (Citations omitted). . .
>
> The taking of an assignment under circumstances such as those detailed above cannot possibly change the essential fact that the defendants are rendering legal services for another for gain, 107 Utah at 392-393, 154, P.2d at 639-640.

In *Bump v. Barnett*, 235 Iowa 308, 16 N.W.2d 579 (1944), a case presenting a factual situation almost identical to the one presented here, the court noted the distinction between allowing persons who actually purchase assignments to maintain actions in their own names and allowing collection agencies to take assignments for that purpose.

Take first the right of assignment and of the assignee to bring action in his own name on the assigned chose. The Carson, Pirie Scott case [*Carson, Pirie Scott & Co. v. Long*, 222 Iowa 506, 268 N.W. 518 (1936)] fairly illustrates an exercise of these rights. It did not involve in any way a practice by plaintiff of soliciting claims for litigation or collection, of holding itself out as able to repossess property, or of contracting for the conduct of litigation. Plaintiff in that case was one of several creditors of the defendant. The claims of the others were assigned to plaintiff so all could be sued on in one action. It reveals a legitimate exercise of the statutory powers referred to above.

Other examples could no doubt be imagined. Undoubtedly one might for example engage in the business of buying claims as investments and might take assignments of them to himself and maintain actions thereon in his own name. But when he does not purchase the claims and only takes colorable assignment of them so he may render or cause to be rendered legal service to others and holds himself out as engaged in such practice, it is a quite different matter. In one case he is dealing in property on his own account, in the other he is selling service and merely adopting the guise of an investor to conceal the real nature of his operations.

And so with the right of a plaintiff to try his own lawsuit in any court. If it is really his own litigation the right is unquestioned and unquestionable. But if it is another's lawsuit or action, placed in plaintiff's name so as to enable him to render service to that other under the pretext of trying his own case, it does not come under the protection of the rule. And if it is done by one who engages in

it as a business and holds himself out as peculiarly qualified or equipped, it comes under the ban of illegal practice of law. 235 Iowa at 313, 16 N.W.2d at 582.

These cases reflect the view of other courts that assignments in such instances are obtained by collection agencies not for the purpose of acquiring ownership of the claim, but instead as a device to facilitate the collection agency in rendering legal services to creditors who hire the agency to collect debts. *State ex rel. Norvell v. Credit Bureau of Albuquerque*, 85 N.M. 514 P.2d 40 (1973); *State ex rel. McKittrick v. C. S. Dudley & Co., supra*; *State v. James Sanford Agency, supra*. The assignor retains an interest in the claim which is involved in and affected by the outcome of the litigation which is controlled by the collection agency. *Bay County Bar Ass'n v. Dudley & Co., supra*; *State v. James Sanford Agency, supra*. Unlike the casual assignment for procedural convenience which permits groups of persons to pursue collectively a similar or common right or allows one of a defendant's creditors to sue in one action on the claims of all creditors, the assignment of a creditor's claim to a collection agency for purposes of enabling the agency to sue in its own name is a sham and a fraud perpetrated upon the court, a subterfuge which permits the collection agency to carry on the business of practicing law without being subject to the regulation and control of the courts. *Nelson v. Smith, supra. See also People v. Securities Discount Corp., supra; Bump v. Barnett, supra; Bay County Bar Ass'n v. Finance System, Inc., supra; State ex rel. McKittrick v. C. S. Dudley & Co., supra; State v. James Sanford Agency, supra; State ex rel. State Bar of Wisconsin v. Bonded Collections, Inc., supra*. In such circumstances the collection agency is not appearing *pro se* in order to vindicate its own rights in the claim by virtue of the assignment, but rather is rendering legal services to others in violation of the prohibition against the unauthorized practice of law. *State ex rel. Norvell v. Credit Bureau of Albuquerque, supra*.

Further, the collection agency cannot remove itself from the sphere of unauthorized practice of law by em-

ploying an attorney to appear in court and prepare legal documents incident to a suit brought by the agency as a representative of its clients. The prohibition against the unauthorized practice of law applies alike to practice by a layman directly and to the indirect practice through an agent or employee, even if that employee or agent is a licensed attorney. *J. H. Marshall & Associates v. Burleson, supra*; *Bay County Bar Ass'n v. Finance System, Inc., supra*; *State ex rel. McKittrick v. C. S. Dudley & Co.*; *Nelson v. Smith, supra.* An attorney selected, hired, directed and compensated by a collection agency to prosecute the claims of creditors represented by the agency is clearly the agent of the collection agency rather than that of the creditor whose interests are being litigated. The collection agency interposes itself between the attorney and the actual client so that the attorney is answerable to the collection agency and under its direct control. There is no confidential relationship between the attorney and the true client—the creditor. Rather, the collection agency is, as a part of its business, supplying to its customers, for a consideration, the legal services of its lawyers. While a layman may have an agent select an attorney for him and even deal with the attorney through the agent, the attorney must in fact represent the purported principal rather than the purported agent. *State ex rel. McKittrick v. C. S. Dudley & Co., supra*; *Nelson v. Smith*, supra.

### III

Having determined that the actions of South Charleston Adjustment Bureau and its manager in filing a complaint and appearing in magistrate court constituted the unauthorized practice of law, the question remains whether W. Va. Code § 50-4-4a (1980 Replacement Vol.), which authorizes parties to appear in magistrate court by lay agent, is unconstitutional as a legislative usurpation of this Court's power to define and regulate the practice of law. W.Va. Code § 50-4-4a provides in material part:

> Any party to a civil action in a magistrate court may appear and conduct such action in person, by agent or by attorney. Appearance by an agent or

> attorney shall have the same effect as appearance by the party represented, and the appearance by an agent shall not constitute the unlawful practice of law. . . .

The petitioner contends that this statute conflicts with this Court's definition of the practice of law and infringes upon our power to define and regulate the practice of law by authorizing laymen not licensed by or subject to the regulation of this Court to engage in the practice of law.

It cannot be questioned that the Legislature cannot restrict or impair the power of the judiciary to regulate the practice of law by enacting a statute permitting or authorizing laymen to practice law. *State ex rel. Thorn v. Luff*, 154 W. Va. 350, 175 S.E.2d 472 (1970); *West Virginia State Bar v. Earley, supra.* Where, however, the intrusion upon the judicial power is minimal and inoffensive, and is consistent with and intended to be in aid of the aims of the Court with respect to the regulation of the practice of law, such legislation may be upheld as being in aid of the judicial power. After reviewing the purpose of the background surrounding the enactment of W. Va. Code § 50-4-4a, we conclude that the statute is legislation in aid of the goals of this Court and does not unconstitutionally infringe upon the power of this Court to regulate the practice of law.

A fair reading of article 8 of our constitution reveals that the Legislature and the judiciary were to act in concert in establishing the magistrate court system. With respect to their civil jurisdiction, the magistrate courts were intended to be "people's courts," the purpose of which was to provide the ordinary person involved in small claims litigation with an accessible forum for resolution of disputes, unburdened by the expense and delay usually associated with litigation. Magistrates were not required to have legal training or to be licensed to practice law. Procedures in magistrate courts were streamlined and simplified to meet the needs of those persons for whose convenience the system was designed. It was anticipated that the informal nature of the proceedings in

magistrate courts would encourage individuals to prosecute their own claims and, thus, avoid the necessity and expense of hiring a lawyer.

W. Va. Code § 50-4-4a furthers this goal by permitting the casual appearance, not for pay, by laymen in a representative capacity as a form of neighborly or kindred accommodation. It anticipates an isolated or casual appearance by a non-lawyer friend or relative of a party to proceedings in magistrate courts for the purpose of assisting such party in representing himself in the litigation. The statute does not purport to authorize laymen to represent parties in magistrate court on a regular basis or to engage in such activity as a business or for pay. It merely authorizes a party who wishes to avoid the expense of hiring an attorney to seek the advice and aid of a friend or family member in presenting his case and to have that person appear with, and perhaps speak for, him. Such representation is well within the spirit and purpose of the magistrate system as envisioned by this Court and the Legislature.

We think it is clear that the purpose of W. Va. Code § 50-4-4a was not to authorize laymen to engage in the practice of law free from the requirements and regulation imposed by this Court upon those who wish to practice law in this State. Rather, the clear purpose and intent of the statute is to encourage parties to civil litigation in magistrate court to appear on their own behalf as a means of effecting a speedy and efficient resolution of small claims. Appearance of a party in magistrate court by lay agent is authorized only when such appearance is an incident of the party's desire to appear *pro se.*

Acts of the Legislature are presumed to be constitutional, and courts will interpret legislation in any reasonable way which will sustain its constitutionality. *State ex rel. City of Charleston v. Coghill,* 156 W. Va. 877, 207 S.E.2d 113 (1973); *State ex rel. Appalachian Power Co. v. Gainer,* 149 W. Va. 740, 143 S.E.2d 351 (1965). Thus where a statute is susceptible of more than one construction, one which renders the statute constitutional, and the other which renders it unconstitutional, the statute will be given the

construction which sustains constitutionality. *State ex rel. Slatton v. Boles,* 147 W. Va. 674, 130 S.E.2d 192 (1963), *Board of Education v. Board of Public Works,* 144 W. Va. 593, 109 S.E.2d 552 (1959). We conclude, therefore, that W. Va. Code § 50-4-4a, authorizing appearance of parties to civil litigation in magistrate court by lay agent, does not permit the unauthorized practice of law. Rather the statute anticipates the appearance of a party by a non-lawyer agent on a casual, non-recurring, non-pay basis as a means of assisting the party appearing *pro se.*

It should be obvious to all that under our construction of W. Va. Code § 50-4-4a, collection agencies such as South Charleston Adjustment Bureau are not authorized to appear in magistrate court on behalf of a creditor for the purpose of collecting debts. The corporation is not attempting to vindicate its own claims against a defendant debtor, but is seeking to secure adjudication of the rights of a third party—the creditor. The lay officer or employee who appears as the agent of the collection agency is not appearing in a *pro se* capacity as the individual spokesperson of the collection agency, but rather as the representative of the creditor for whom the collection agency has undertaken, as part of its business, the service of collecting a debt. Such representation is clearly not contemplated by the law.

To hold that a collection agency may appear regularly in magistrate court as the representative of creditors seeking to recover debts would be to pervert the legitimate purpose of the statutory scheme in providing an inexpensive and efficient procedure for resolution of disputes by the parties themselves and would turn the magistrate court into an enforcement agency of debt collectors. As was noted in *Bump v. Barnett,* 235 Iowa at 314, 16 N.W.2d at 582-583:

> The salutary purpose of the statute may not thus be perverted to encourage the growth of a class of "justice court lawyers." unfettered by the rules that bind licensed attorneys and without training in law and ethics. Such rules are just as important in justice courts as in courts of record—

> more important, perhaps, because the justice of the peace is often one untrained in such matters—and certainly such safeguards are not less important by reason of the fact, if it be a fact, that justice courts are "poor men's courts." The poor man is entitled to the same professional service as are more favored litigants."

This fact is brought home in the instant case by the failure of South Charleston Adjustment Bureau's non-lawyer manager to promulgate a proper complaint to institute proceedings.

We hold, therefore, that the complaint filed in the instant case did not meet the requirements of the statute or of due process and the default judgment entered thereupon is void. We further conclude that W. Va. Code § 50-4-4a, specifically authorizes a party appearing *pro se* in magistrate court to be assisted by a lay agent in certain circumstances and does not usurp this Court's power to define and regulate the practice of law. Finally, we find that the appearance of South Charleston Adjustment Bureau in the magistrate court constituted the unauthorized practice of law and was not contemplated by W. Va. Code § 50-4-4a. The writ of prohibition prayed for is awarded to restrain enforcement of the judgment of the Magistrate Court of Boone County.

*Writ awarded.*