IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 19-0802

_____

FILED
April 23, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES,
Respondent Below, Petitioner

v.

C. P.,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Webster County, West Virginia
The Honorable Jack Alsop, Judge
Civil Action No. 18-P-8

AFFIRMED

_____

Submitted: January 26, 2021
Filed: April 23, 2021

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
Thomas T. Lampman, Esq.
Assistant Solicitor General
Charleston, West Virginia
Counsel for Petitioner

James R. Milam II, Esq.
James R. Milam II Attorney at Law,
PLLC
Summersville, West Virginia
Counsel for Respondent

Colleen C. McCulloch, Esq., Chair
J. Zak Ritchie, Esq., Vice Chair
Unlawful Practice of Law Committee
West Virginia State Bar
Charleston, West Virginia
Counsel for Amicus Curiae Unlawful Practice
Of Law Committee of the West Virginia State Bar

Rebecca D. McDonald, Esq.
West Virginia Department of Transportation
Charleston, West Virginia
Counsel for Amicus Curiae West Virginia
Department of Transportation

JUSTICE WOOTON delivered the Opinion of the Court.
CHIEF JUSTICE JENKINS and JUSTICE ARMSTEAD dissent and reserve the right to file separate opinions.

SYLLABUS BY THE COURT

1. "Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided." Syl. Pt. 1, *Israel ex rel. Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989).

2. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

3. "In the exercise of their inherent power the courts may supervise, regulate and control the practice of law by duly authorized attorneys and prevent the unauthorized practice of law by any person, agency or corporation." Syl. Pt. 10, *W. Va. State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959).

i

4.      "The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals."  Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982).

5.      "The character of the act, and not the place where it is performed, is the decisive factor in determining whether the act constitutes the practice of law."  Syl. Pt. 5, *W. Va. State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959).

6.      While the character of the act is the decisive factor in determining whether an individual has engaged in the unauthorized practice of law, the act must be examined in the context of the tribunal where the act occurred and the nature of the proceedings.

WOOTON, J.:

This is an appeal from the August 9, 2019, order of the Circuit Court of Webster County vacating the West Virginia Department of Health and Human Resources' ("DHHR") 2005 finding of maltreatment by respondent C. P. as to her then-twelve-year-old son, A. C.[1] The circuit court concluded that the decision of the Administrative Law Judge ("ALJ") upholding the maltreatment finding was erroneous, in part, because it was not supported by a witness with personal knowledge and was based upon inadmissible DHHR records. Primarily, however, the circuit court concluded that the administrative hearing before DHHR's Board of Review was conducted in an unlawful manner because DHHR's non-lawyer representative engaged in the unauthorized practice of law.

After careful review of the briefs of the parties and amici curiae,[2] their oral arguments, the appendix record, and the applicable law, we find that the circuit court correctly determined that the conduct engaged in by DHHR's lay representative at the administrative hearing constituted the unauthorized practice of law. Finding all other

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] The Court wishes to acknowledge and express its appreciation for the contributions of the amici curiae. Briefs were submitted on behalf of the Unlawful Practice of Law Committee of the West Virginia State Bar (the "Committee"), which appeared by counsel at oral arguments, as well as the West Virginia Department of Transportation.

matters mooted by the death of respondent C. P.,[3] we therefore affirm the August 9, 2019, order of the Circuit Court of Webster County.

## I. FACTS AND PROCEDURAL HISTORY

According to DHHR records, in October 2005 an investigation was opened with respect to C. P. and her twelve-year-old son, A. C. The initial report stated that A. C. did "whatever he want[ed]" and there was "no one [] to look after him[.]" The investigation was assigned to Child Protective Services ("CPS") worker Charles Myers, who the records indicate conducted interviews of C. P., A. C., A. C.'s father, and A. C.'s sister, C. C.[4] Mr. Myers' investigation was documented in an "Initial Assessment and Safety Evaluation Worksheet and Conclusion" (the "assessment").

Based upon these interviews and as set forth in the assessment, Mr. Myers found no maltreatment due to lack of supervision but did find maltreatment arising from A. C.'s alcohol use. However, it appears that no abuse and neglect petition was ever filed as a result of Mr. Myers' investigation and finding, no services or further intervention of

---

[3] *See infra.*

[4] During the interviews, Mr. Myers was allegedly provided information that A. C. was dropped off at the local pool and was allegedly drunk, swearing at patrons. C. C. also allegedly recounted an episode where A. C. was found passed out drunk in the back of a truck, with a suspicion that he was also using drugs. C. P. indicated that A. C. would leave home without permission and did not attend school because he would simply leave or get "kicked out." A. C. himself admitted to drinking, smoking marijuana, getting kicked out of school, and leaving home without permission to attend parties.

2

any sort was initiated, and C. P. was apparently not notified of the maltreatment finding at that time.[5]

At some point in 2017—twelve years later—C. P. learned of the finding in conjunction with "an unrelated adoption or guardianship proceeding[.]" She then filed a form "Request for Removal of CPS Finding and Hearing" with DHHR on December 7, 2017. The request for removal was received and denied on February 23, 2018, and a Board of Review proceeding opened on that date. A hearing was conducted on March 21, 2018, before David Bishop, a licensed attorney and ALJ for DHHR's Board of Review. An informational sheet was provided to C. P. prior to the hearing, advising her she had "the right to . . . [p]resent your own case or have someone present your case for you, such as a lawyer, friend, relative, or a community worker."

At the hearing, Joe Sorrent, a CPS supervisor and non-attorney, appeared on behalf of DHHR. C. P. appeared on her own behalf. Mr. Sorrent produced and submitted the CPS investigation file, including the assessment completed by Mr. Myers summarizing his interviews and findings. The ALJ invited Mr. Sorrent to "introduce [the file] into evidence" and asked C. P. if she had "any objection" to admission of the file.

---

[5] DHHR conceded the lack of notice in its supplemental brief.

3

Because Mr. Myers apparently no longer worked for DHHR, Mr. Sorrent testified to the contents of Mr. Myers' assessment, including the interviews, but called no other witnesses in support of DHHR's case. Mr. Sorrent was asked no questions by C. P. C. P. then testified on her own behalf, stating that the investigation was initiated by her call to CPS requesting assistance with A. C. because he was getting into trouble at school. C. P. testified that she had no recollection of any of the events recounted in the assessment. *See supra* n.4. She specifically denied any awareness of A. C.'s alcohol use and denied having an in-person interview with Mr. Myers. C. P. also called C. C. as a witness, who testified by telephone. C. C. similarly denied having an interview with Mr. Myers regarding A. C. and denied knowledge of any of the events described in the interview summaries. In her summary presented to the ALJ, C. P. challenged the veracity of the alleged maltreatment finding, emphasizing that she was never notified of the finding and that no action was ever taken against her with regard to A. C.

Upon invitation of the ALJ, Mr. Sorrent then cross-examined C. P. with questions regarding whether she was aware of being under investigation in 2005, challenging her denial of that fact and inquiring as to why she had contacted CPS for assistance rather than A. C.'s school. He inquired as to whether she was aware of A. C.'s admitted alcohol use and leaving the home without permission, utilizing the submitted documents to attempt to impeach her denial of having any such recollection. He cross-examined her concerning allegations that she had left A. C. at home alone to go on a trip, leaving him with friends, and why she had failed to seek community intervention or

4

services for A. C.  During this cross-examination, C. P. admitted that she had a suspicion about A. C. drinking but stated that she had never actually observed him drinking.

Mr. Sorrent also cross-examined C. C.  He inquired about her awareness of A. C.'s drinking and trouble in school.  He challenged her lack of recall of the interview with Mr. Myers and impeached her with the assessment.  Mr. Sorrent argued with C. C. about whether Mr. Myers' interview summary contained facts that he "would just randomly know without getting any type of information" and whether she "would agree that the documentation that Mr. Myers placed in the initial assessment was accurate, somewhat accurate," which she denied.

Mr. Sorrent was then invited to provide a closing "argument or summary," in which he highlighted the contents of Mr. Myers' assessment and admissions made during C. P.'s testimony, including her admission that she did not attempt to obtain intervention prior to contacting CPS.  Mr. Sorrent emphasized the "threat of harm, that [C. P.] did not protect her child with regards to his age inappropriate behaviors and the risk and the threat that means that this child could have hurt himself[.]"  He further stated that "the Department substantiated [its] finding with regards to the lack of supervision and the child knowingly drinking alcohol."  He concluded by asking the ALJ to "uphold the Department's position that maltreatment did occur, that again [C. P.] knowingly knew of this child's behavior at the young age of 12 and did not seek any type of help prior to talking to Mr. Myers[.]"

On March 27, 2018, the ALJ issued a "Decision of State Hearing Officer" upholding DHHR's substantiation of the maltreatment finding. Specifically, the ALJ determined that C. P.'s denial of awareness of A. C.'s alcohol use was "not credible or persuasive when coupled with the assessment, in which [she] reported she was aware of Child A. C.'s alcohol use." Citing West Virginia Code § 49-1-3(11)(A)(i) (2012) setting forth the definition of "neglected child," the ALJ further concluded that that DHHR "proved by a preponderance of evidence that [C. P.] neglected Child A. C. by failing to provide necessary supervision, threatening his health and safety."[6]

C. P. then appealed to the Circuit Court of Webster County, arguing in her petition that, at best, the investigation revealed that A. C. was incorrigible, rather than maltreated. The circuit court held a hearing and emphasized the lack of notice of the maltreatment finding to C. P. The court further expressed its concern that Mr. Myers did not testify at the administrative hearing and that the ALJ's credibility findings as to C. P. were likely occasioned by the thirteen-year delay caused by DHHR's failure to provide notice.[7] DHHR conceded that Mr. Myers "could have been" subpoenaed, but that because

---

[6] Mr. Myers' assessment, however, had found *no* maltreatment based on failure to supervise; his finding of maltreatment was based solely on A. C.'s "alcohol use."

[7] In response, counsel for DHHR represented that "for several years, there were problems with notices going out" and that in that event, the sixty-day time frame for appealing to the Board of Review was simply waived by DHHR and a hearing held regardless.

the investigative records were admissible under the business record exception, his testimony was unnecessary.

The circuit court entered an order vacating the ALJ's decision, finding that maltreatment had not been substantiated by DHHR. The order concluded that, although the issue was not raised by C. P.,[8] Mr. Sorrent's lay representation of DHHR constituted the unauthorized practice of law. The court noted that Mr. Sorrent "not only testified and presented exhibits but engaged in lengthy cross examination of [C. P.] and her witness." The court noted that despite the existence of DHHR rules ostensibly permitting such representation, any such rule exceeds DHHR's statutory authority and "violates our state constitution by attempting to regulate the practice of law, which is solely reserved to the judicial branch[.]" As such, it concluded that the ALJ "committed plain error by permitting DHHR to proceed without counsel" and the proceeding was therefore "conducted in an unlawful manner in violation of the West Virginia Constitution and West Virginia Code." This appeal followed.

## II. STANDARD OF REVIEW

Generally,

[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are

---

[8] West Virginia Code § 29A-5-4(e) (1998) provides that a reviewing court "may consider and decide errors which are not assigned or argued."

7

accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). As explained below, because all that remains in this case is our examination of whether Mr. Sorrent engaged in the unauthorized practice of law, our review is plenary.

## III. DISCUSSION

Before oral argument DHHR alerted the Court that C. P. died in December 2020; she had previously filed a summary response supporting the circuit court's determination on the evidentiary issues and declaring that the unauthorized practice of law issue did not "pertain to her." DHHR agreed that C. P.'s death mooted the appeal but moved the Court to hear it nonetheless because it presented issues which are "capable of repetition and yet will evade review." *See* Syl. Pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W. Va. 387, 317 S.E.2d 150 (1984) ("A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review."). The Court granted the motion and excused C. P.'s counsel from appearance at oral argument.

The Court now expressly finds that the issue pertaining to the unauthorized practice of law satisfies the "public interest" exception to the mootness doctrine and should be addressed "for the future guidance of the bar and of the public":

8

Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. Pt. 1, *Israel ex rel. Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989). We further find that all other issues pertaining to the circuit court's evidentiary rulings are mooted by C. P.'s death and do not fall within the exceptions articulated in *Israel*.

In that regard, DHHR argues that the conduct in the administrative hearing below—and use of lay representatives of DHHR in Board of Review proceedings in general—does not constitute the unauthorized practice of law. The Committee, in its brief and oral argument, agrees with that position. Both carefully craft their endorsement of such lay representation by characterizing the activity as involving mere factual development or presentation: "[N]on-lawyer representatives of DHHR who participate in administrative proceedings by only presenting evidence, including by eliciting testimony from or cross-examining fact witnesses, or by making primarily fact-based arguments or summations, are not engaged in the unlawful practice of law." DHHR further contends that the nature of its Board of Review proceedings reflects an informal process designed in aid of a swift and expeditious resolution of such matters, and that unnecessary restrictions

9

on the mode and manner of advocacy in that setting undermines its purpose. DHHR goes a step further, advocating for a presumption that its lay representatives are not engaged in the practice of law in such proceedings, emphasizing its long-standing use of such representatives.

It is well-established that "[i]n the exercise of their inherent power the courts may supervise, regulate and control the practice of law by duly authorized attorneys and prevent the unauthorized practice of law by any person, agency or corporation." Syl. Pt. 10, *W. Va. State Bar v. Earley*, 144 W.Va. 504, 109 S.E.2d 420 (1959). Moreover, "[t]he exclusive authority to define . . . the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syl. Pt. 1, in part, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982). Accordingly, the Court has adopted the following general definition of the practice of law: "In general, one is deemed to be practicing law whenever he or it furnishes to another advice or service under circumstances which imply the possession and use of legal knowledge and skill." W. Va. Def. Prac. L., (eff. January 1, 2020) ("Definition").

Pertinent to the issue before the Court, the Definition further provides:

> More specifically but without purporting to formulate a precise and completely comprehensive definition of the practice of law or to prescribe limits to the scope of that activity, one is deemed to be practicing law whenever . . . (3) *one undertakes*, with or without compensation and whether or not in connection with another activity, to represent the interest of another before any judicial tribunal or officer, or *to*

10

> *represent the interest of another before any executive or administrative tribunal, agency or officer otherwise than in the presentation of facts, figures or factual conclusions as distinguished from legal conclusions in respect to such facts and figures.*

*Id.* (emphasis added). Unquestionably, this Definition focuses primarily on *conduct* which constitutes the practice of law and, in this regard, constrains non-lawyer representation in administrative tribunals to the "presentation of facts, figures or factual conclusions[.]" Similarly, this Court has held that "[t]he character of the act, and not the place where it is performed, is the decisive factor in determining whether the act constitutes the practice of law." Syl. Pt. 5, *Earley*, 144 W. Va. 504, 109 S.E.2d 420. In that regard, the circuit court below concluded that "the fact that this was an administrative hearing is [of] no moment."

DHHR therefore presents an initial challenge to the circuit court's analysis of the unauthorized practice issue, arguing that the court erred in focusing on Mr. Sorrent's conduct without regard to the nature of the tribunal, the proceedings, and the representation itself. To this limited extent, we agree with DHHR and do not construe syllabus point five of *Earley* as restrictively as the circuit court. Historically, our analysis has considered not only the "character of the act" at issue, but the nature and purpose of the tribunal and its processes where the act occurred. *See id.*, 114 W. Va. at 513, 109 S.E.2d at 427-28 (examining procedures employed and nature of claims litigated in workers' compensation hearings); *State ex rel. Frieson v. Isner*, 168 W. Va. 758, 776-78, 285 S.E.2d 641, 654-55 (1981) (examining purpose and nature of magistrate court proceedings); *Shenandoah Sales & Serv., Inc. v. Assessor of Jefferson Cty.*, 228 W. Va. 762, 770, 724 S.E.2d 733, 741

(2012) (prohibiting activities which "constitute the practice of law in a *circuit court*" (emphasis in original)).

We find that syllabus point five of *Earley*, rather than constraining the scope of our analysis, merely states the obvious—that conduct is the *sine qua non* of the unauthorized practice of law, and an act will neither be regarded nor exempted as unauthorized practice irrespective of its character simply because of where it occurs. And while we agree that the character of the act is the decisive factor in determining whether an individual has engaged in the unauthorized practice of law, the act must be examined in the context of the tribunal where it occurred and the nature of the proceedings. Accordingly, an examination of DHHR's Board of Review and the proceedings below are in order.

DHHR BOARD OF REVIEW PROCEEDINGS

While DHHR provides little by way of comprehensive discussion of the Board of Review and how it conducts its ordinary business, it is a statutory creation authorized by West Virginia Code § 9-2-6(13) (2018),[9] and appears to operate under the

---

[9] Subsection 13 empowers the Secretary of DHHR to

> organize within the department a Board of Review, consisting of a chairman appointed by the secretary and as many assistants or employees of the department as may be determined by the secretary and as may be required by federal laws and rules respecting state assistance, federal-state assistance, and federal

(continued . . .)

umbrella of the Inspector General. West Virginia Code § 9-2-6(7) empowers the Secretary

to create the Office of Inspector General for the purpose of

> conducting and supervising investigations, performing inspections, evaluations, and review, and providing quality control for the programs of the department. The Office of Inspector General shall be headed by the Inspector General who shall report directly to the secretary. . . . The secretary shall place within the Office of Inspector General any function he or she deems necessary.

Although the proceedings at issue in the instant case involved a challenge to a CPS finding

of maltreatment, the Board of Review's purview is considerably broader. [10] We therefore

---

> assistance, such Board of Review to have such powers of a review nature and such additional powers as may be granted to it by the secretary and as may be required by federal laws and rules respecting federal-state assistance and federal assistance.

[10] The Board of Review's official website states that its mission is to "preserve the integrity of Department programs by providing due process to appellants through impartial hearings and timely decisions." *See* http://www.wvdhhr.org/oig/bor.html (last visited March 10, 2021). The website indicates that reasons for hearings include:

> denial of benefits, termination of benefits, reduction of benefits, disputes over findings by Child Protective Services (CPS) and Adult Protective Services (APS), closure or denial of foster homes, closure or denial of child care providers, determination of Supplemental Nutrition Assistance Program (SNAP) intentional program violations, nursing facility discharge or transfer, and disqualification of Women, Infants, and Children (WIC) Vendors

*Id*. The Court recognizes that many of these hearings may not implicate the same adversarial process and/or conduct by a DHHR lay representative as a challenge to a CPS finding. In fact, many such proceedings involving benefits may well be similar to informal unemployment compensation proceedings conducted before a referee, rather than an ALJ, where lay representation has been widely found permissible in other jurisdictions, as (continued . . .)

13

find it appropriate to limit our analysis and discussion to the specific proceedings conducted herein, involving DHHR's use of a lay representative to defend a challenge to a CPS finding of maltreatment.

Proceedings before DHHR's Board of Review are governed by both the Administrative Procedures Act, West Virginia Code §§ 29A-5-1 to -5, and regulations promulgated by DHHR. *See* W. Va. C.S.R. § 69-1-3.1 ("All administrative hearings conducted pursuant to this rule will be held in accordance with the provisions of West Virginia Code, § 29A-5-1 *et seq.,* and with the provisions of this rule."). With respect to representation by non-lawyers in Board of Review proceedings, neither the Administrative Procedures Act nor the rules *expressly* permit or forbid this practice, unlike many other agencies' procedural rules. [11] DHHR, however, argues that West Virginia Code of State

---

argued by DHHR and discussed more fully *infra*. The propriety of lay representation of DHHR and the actions typically engaged in by such representatives in those type of proceedings, however, is not presently before the Court.

[11] *See, e.g*, W. Va. C.S.R. § 84-1-5.4.3 (stating that in proceedings before the Unemployment Commission, "[a] government employer, whether federal, state, or local, or the Unemployment Compensation Claims office, may be represented only by an attorney duly licensed or authorized to practice law in the State of West Virginia."); *Id*. § 114-76-3 (stating that in proceedings before Insurance Commissioner, individuals may appear pro se, corporations may be represented only by an attorney, and "[r]epresentation by lay persons [is] prohibited"); *Id*. § 150-1-12.7 (in proceedings before the Public Service Commission, parties may appear only pro se or by attorney, but permitting partner to represent partnership, with permission); *compare with, e.g., Id*. § 121-1-110.5.1 (stating that in small claims cases before Office of Tax Appeals, which are "handled more informally," petitioner "may appear before the office of tax appeals in his or her own behalf, or may be represented by an attorney or by any other person as he or she may (continued . . .)

14

Rules § 69-1-4.7 permits DHHR to utilize lay representatives by stating: "Every party, as well as the secretary *and his or her staff*, shall have the right of cross-examination of witnesses who testify, and shall have the right to submit rebuttal evidence." (Emphasis added).[12]

_____

choose."); *Id*. § 37-1-2.6 (stating that in proceedings before the Mine Board of Appeals, parties may appear pro se or by counsel and providing "any party who is also an operator may be represented by a full-time employee, and any miner may be represented by the representative of miners.").

[12] In this regard, as part of DHHR's first assignment of error, it claims that the circuit court exceeded its authority by "invalidating" West Virginia Code of State Rules § 69-1-4.7. We disagree with DHHR's characterization. While we note the inclusion of language in the discussion portion of the circuit court's order to the effect that it "finds" the Rule "statutorily impermissible," we do not agree that the court's order ultimately purports to invalidate the rule. In its conclusion, the circuit court ruled only that the hearing was conducted in an unlawful manner due to the unauthorized practice of law and that DHHR failed to produce competent evidence to meet its burden of proof, reversing and vacating the ALJ's decision as a result. We therefore do not find occasion to address the circuit court's authority to invalidate the Rule itself.

In that regard, however, while DHHR urges that West Virginia Code of State Rules § 69-1-4.7 implicitly permits such representation—a reading to which this Court defers for purposes of this case—we note that a rule stating simply that both parties, including whichever representative appears for DHHR, are entitled to cross-examination of witnesses generally does not necessarily suggest that a *lay representative* may perform the cross-examination. A similar reading of federal legislation was adopted by the Third Circuit:

> Although the Act does give "[a]ny party to any hearing" the right to "present evidence and confront, cross-examine, and compel the attendance of witnesses," those functions are not designated to be performed by lay advocates. Furthermore, the statute does not use the word "represent" . . . as would be expected if Congress [so] intended[.]

(continued . . .)

15

The rules governing proceedings before the Board of Review, as set forth in West Virginia Code of State Rules §§ 69-1-1 to -10, reveal that a hearing officer must be a licensed attorney, unless he or she is otherwise a member of the Board of Review. *Id*. § 69-1-8.1.[13] Discovery is permitted with approval of the hearing officer and subpoenas may be issued. *Id*. §§ 69-1-6 and -7. A record of the proceedings is created, and both the West Virginia Trial Court Rules and West Virginia Rules of Evidence are applicable, although strict application of the latter is tempered somewhat by permitting the admission of evidence "of a type commonly relied upon by reasonably prudent persons in the conduct of their office" when "necessary to ascertain facts not reasonably susceptible of proof." *Id*. §§ 69-1-4.1, -4.3, and -4.5. Parties may present "evidence and argument," including calling of witnesses; cross-examination is permitted by "every party" as well as "the right to submit rebuttal evidence." *Id*. §§ 69-1-4.1 and -4.7. DHHR's documentation including

---

*Arons v. N. J. State Bd. of Educ.*, 842 F.2d 58, 62 (3d Cir. 1988) (citations omitted). The foregoing notwithstanding, the Court does not address herein the adequacy or propriety of the Rule itself. Rather, we limit our review to whether the circuit court properly concluded that Mr. Sorrent engaged in the unauthorized practice of law in the proceedings below.

[13] During oral argument, however, DHHR stated that the Board of Review does not always utilize hearing officers who are attorneys; it is not clear whether those officers are otherwise members of the Board of Review. DHHR fails to provide any particular detail in its briefing as to which types of matters are assigned to non-attorney hearing officers rather than an ALJ. Regardless, the Rule speaks for itself and in fact the matter below was presided over by an ALJ who is a licensed attorney.

16

"papers, records, agency staff memoranda and documents . . . shall be offered and made a part of the record in the case." *Id*. § 69-1-4.6.[14]

The ALJ's decision is memorialized in formal findings of fact and conclusions of law. *Id*. § 69-1-9. If appealed to the circuit court, such findings and conclusions are governed by a deferential standard of review. W. Va. Code § 29A-5-4 provides that such review "shall be upon the record made before the agency" and the court may reverse, vacate or modify the decision only

> if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

[14]The appendix record also contains an information sheet provided to claimants in advance of their hearing which states that he or she "ha[s] the right to," among other things, "[p]resent your own case or have someone present your case for you, such as a lawyer, friend, relative, or a community worker." The sheet further states that the procedures allow for "[c]ross-examination by the Department's representative[.]"

*Id*. § 29A-5-4(f) and (g); *see* W. Va. C.S.R. § 69-1-9.4 ("All appeals from the final order or decision of the secretary shall be taken pursuant to West Virginia Code, § 29A-5-4.").

Having examined the nature of the Board of Review and its proceedings, we turn now to our caselaw for guidance as to whether the tribunal and proceedings themselves present a heightened risk for lay representation which encroaches into the unauthorized practice of law. DHHR argues that proceedings before the Board of Review are tantamount to magistrate court proceedings, where this Court has expressly sanctioned the use of non-attorney representation. *See Frieson,* 168 W. Va. 758, 285 S.E.2d 641. It argues that, similar to proceedings in magistrate court, Board of Review proceedings are "relatively informal" and that their construct is designed to make the proceedings "accessible to parties who frequently do not have legal representation[.]" It further argues that these proceedings are akin to unemployment compensation hearings before a referee where non-attorney representation has been found not to constitute the unauthorized practice of law in several jurisdictions.

In *Frieson*, this Court examined whether a debt collection agency could properly appear on behalf of a creditor in magistrate court. The Court concluded that the agency could not, through assignment or otherwise, make appearances or prepare and file pleadings on behalf of another in magistrate court without engaging in the unauthorized practice of law. *See id.,* Syl. Pt. 3. However, the Court also held, more generally, that the statute authorizing appearances "by agent" in magistrate court, West Virginia Code § 50-

18

4-4a (1980), did not infringe on the Court's power to regulate the practice of law. Syllabus point four, in part, of *Frieson* holds that the statute does not permit the unauthorized practice of law, but rather "anticipates the appearance of a party by a non-lawyer agent on a *casual, non-recurring, non-pay basis* as a means of assisting the party appearing pro se." 168 W. Va. at 758, 285 S.E.2d at 641. (Emphasis added). The Court endorsed this limited "intrusion" into its power to regulate the practice of law, stating that

> [w]here [] the intrusion upon the judicial power is minimal and inoffensive, and is consistent with and intended to be in aid of the aims of the Court with respect to the regulation of the practice of law, such legislation [permitting lay representation] may be upheld as being in aid of the judicial power.

*Id*. at 777, 285 S.E.2d at 654.

In endorsing lay representation in magistrate court, *Frieson* noted that magistrate court procedures were "streamlined and simplified" and designed to "effect[] a speedy and efficient resolution of small claims." *Id*. at 777-78, 285 S.E.2d at 654-55. It observed that magistrates were "not required to have legal training or to be licensed to practice law." *Id*. at 777, 285 S.E.2d at 654. Critically, the Court explained that the statute contemplates

> permitting the *casual appearance*, not for pay, by laymen in a representative capacity as a form of neighborly or kindred accommodation. It anticipates *an isolated or casual appearance* by a non-lawyer friend or relative of a party to proceedings in magistrate courts for the purpose of assisting such party in representing himself in the litigation. The statute does not purport to authorize laymen to represent parties in magistrate court *on a regular basis* or to engage in such activity

19

as a business or for pay. . . . Such representation is well within the spirit and purpose of the magistrate system as envisioned by this Court and the Legislature.

*Id*. at 778, 285 S.E.2d at 654-55 (emphasis added).

Despite DHHR's insistence that Board of Review proceedings are tantamount to the "people's court" motif presented in magistrate court, we find there are marked and critical differences. First, Board of Review proceedings require the hearing officer to be a licensed attorney, unless a member of the Board; as *Frieson* noted, magistrates need not be attorneys. Second, from a procedural standpoint, Board of Review proceedings appear to offer many of the same litigation privileges associated with most trial courts. While somewhat truncated, West Virginia Code of State Rules § 69-1-1 *et seq*. describes a robust set of devices and procedures which closely mirror traditional adversarial proceedings: discovery, subpoena power, a stenographic record, the ability to make motions and lodge objections, the ability to call and cross-examine witnesses, and introduce documents, all of which culminate in formal findings of fact and conclusions of law.[15] Both the West Virginia Rules of Evidence and West Virginia Trial Court Rules

---

[15] The sliding scale of the formality of agency proceedings has been described as follows:

Informal agency action, is the "accepting, reviewing, and processing" of various forms; the agency may or may not give reasons for its decision. Formal agency action, on the other hand, is when the agency holds a full evidentiary hearing with "elements of a trial-type proceeding without actually slipping over the line into formal adjudication."

(continued . . .)

20

apply.[16]  As such, these processes are only as "streamlined and simplified" as the parties choose to make them and in accordance with the proceeding's expedited timeline.

Most importantly, however, on appeal from a magistrate court bench trial, the circuit court engages in a de novo review.  *See* Syl. Pt. 3, *State ex rel. DeCourcy v. Dent*, 240 W. Va. 163, 807 S.E.2d 834 (2017) ("An appeal of a civil action tried before a magistrate without a jury under West Virginia Code § 50-5-12(b) (2016) shall be a trial de novo, meaning a new trial in which the parties may present new evidence including witness testimony not presented in magistrate court.").  In contrast, on appeal from an administrative proceeding, the reviewing court is limited to a deferential review, upon the established record.  *See* Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996) ("The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis."). The deference afforded to the ALJ is substantial; as this Court has explained,

---

Clayton, Barbara Allison, *Are We Our Brother's Keepers? A Discussion of Nonlawyer Representation Before Texas Administrative Agencies and Recommendations for the Future*, 8 Tex. Tech Admin. L.J. 115, 124 (2007) (quoting Fox, William F., Jr., *Understanding Administrative Law* 8, at 314 (1997)).

[16] Notably, although DHHR suggests the Rules of Evidence are "relaxed," the circuit court below found that DHHR failed its burden of proof, in part, by concluding that the ALJ improperly admitted evidence which did not satisfy the business records exception to the hearsay prohibition.  Again, however, we do not pass upon the correctness of the circuit court's ruling that the DHHR investigative file was not properly admitted into evidence.

> [w]e must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. *Board of Education of the County of Mercer v. Wirt*, 192 W.Va. at 579, 453 S.E.2d at 413 ("[i]ndeed, if the lower tribunal's conclusion is plausible when reviewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently if it had been the trier of fact"). Whether or not the ALJ came to the best conclusion, however, she was the right person to make the decision.

*Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995).

Moreover, *Frieson* underscored the "isolated" and "casual" appearances permitted by lay representatives in magistrate court, rejecting representation which constituted the lay advocate's business model. 168 W. Va. at 778, 285 S.E.2d at 654. In contrast, DHHR indicates that it regularly utilizes its lay representatives in Board of Review proceedings, engaging the Attorney General's office only for preparation of legal memoranda where requested. DHHR estimates that its practice of appearing by lay representative has been ongoing for at least thirty years, in approximately 2,000 proceedings per year, and "inform[s] the Legislature's and Department's budgetary and staffing decisions." We find that this is a far cry from the "isolated," "casual," and "non-recurring" representation endorsed in *Frieson*.

We are also unpersuaded by DHHR's attempt to liken its proceedings to unemployment compensation proceedings in other jurisdictions that permit lay representation. In *Harkness v. Unemployment Compensation Board of Review*, 920 A.2d

22

162, 168 (Pa. 2007), the Pennsylvania Supreme Court approved use of non-attorney representatives on the basis that the unemployment proceedings were "largely routine and primarily focus upon creating a factual basis on which a referee will award or deny unemployment compensation benefits" and that such non-attorney representatives typically "attend unemployment compensation proceedings to provide appropriate personnel records and other documents[.]" *Accord Sudzus v. Dep't of Employment Sec.*, 914 N.E.2d 208, 217 (Ill. App. Ct. 2009) (finding no unauthorized practice in appearing in unemployment proceeding where non-lawyer "supplied simple, fact-based answers"). However, the *Harkness* court underscored that in those proceedings, "[t]he rules of evidence are not mandated; there is no pre-hearing discovery; . . . [and] indeed there is no requirement that the referee be a lawyer." *Id*.

In *Henize v. Giles*, 490 N.E.2d 585, 589 (Ohio 1986), the court conceded that non-attorney representation in an unemployment compensation proceeding "could arguably be viewed as the practice of law." (footnote omitted). However, it found that in that "*limited setting*" such proceedings were not "adversarial proceedings" but rather were "an informal mechanism through which the referee, in a participatory capacity, ascertains the facts involved." *Id*. at 590 (emphasis in original) (footnote omitted). Like *Harkness*, the *Henize* court noted that the board was not bound by "evidentiary or procedural rules in the conduct of hearings" nor are "board referees and board members [] statutorily required to be attorneys." *Id*. at 587-88.

We find that the unemployment compensation proceedings before a "referee" as described in these cases more akin to the informal unemployment compensation claims review process outlined in West Virginia Code § 21A-7-4 (1994), where a party may request a hearing before a non-attorney deputy. Pursuant to West Virginia Code § 21A-7-7 (1981), an aggrieved party may then appeal the deputy's findings to an appeal tribunal that conducts a full evidentiary hearing. Those appeal proceedings are governed by procedural rules[17] similar to those outlined in West Virginia Code of State Rules § 69-1-1 *et seq.* for DHHR Board of Review proceedings. In the appeal proceedings, lay representation is not permitted. *See* W. Va. C.S.R. § 84-1-5.4.

Accordingly, the Court finds that the proceedings and conduct which occurred in the instant case bear little resemblance to magistrate court or unemployment compensation proceedings before a non-attorney referee for purposes of our analysis here. Rather, we observe that both the conduct at issue and proceedings below are nearly identical to those we addressed in *Earley,* where we held that lay representation of claimants in hearings before the then-workers' compensation commission or its hearing examiners constituted the unauthorized practice of law. *See* 144 W. Va. 504, 109 S.E.2d 420, syl. pt. 4.[18] The Court found that one of the hallmarks of legal representation is

---

[17] *See* W. Va. C.S.R. § 84-1-1 *et seq.*

[18] Syllabus Point 4 of *Earley* states:

(continued . . .)

"appearance for clients before public tribunals, which possess the power and authority to determine rights of life, liberty and property according to law, in order to assist in the proper interpretation and enforcement of law."  *Id*. at 520, 109 S.E.2d 431.  With respect to the specific proceedings and conduct presented in *Earley*, the Court carefully examined the nature of the claim and manner in which the proceedings were conducted, observing that after a finding was made by the Commissioner and protested by a claimant, "[w]hen this stage of the proceeding is reached the proceeding becomes *adversary*."  *Id*. at 513, 109 S.E.2d at 428 (emphasis added).

In light of the adversarial nature of our workers' compensation proceedings, the Court analogized them to those addressed by the South Carolina Supreme Court in *State ex rel. Daniel v. Wells*, 5 S.E.2d 181 (S. C. 1939), *holding modified by In re Unauthorized Practice of Law Rules Proposed by S.C. Bar,* 422 S.E.2d 123 (S. C. 1992).  In particular, we restated the *Daniel* court's conclusion that

> "[w]hile there are no formal pleadings, the issues as to both facts and law are made before such commissioners. At this hearing *the record is made and it is upon this record that the*

A layman who appears in behalf of claimants for compensation at hearings before the State Compensation Commissioner, an administrative agency or tribunal, and his duly appointed trial examiners, and prepares notices of appeal from the rulings of the commissioner to the Workmen's Compensation Appeal Board, is engaged in the practice of law and such conduct constitutes the unauthorized practice of law which may be prevented by injunction.

144 W. Va. 504, 109 S.E.2d 420.

25

*proceedings may be reviewed by the full Commission*, from whose award an appeal may be taken to the Circuit Court. The ultimate rights of the parties depend upon the record made before the hearing commissioner. . . . *Examination and cross examination of witnesses require a knowledge of relevancy and materiality*. Such examination is conducted in much the same manner as that of the Circuit Court. Improper or irrelevant testimony must be objected to, or otherwise it may be considered. . . . Facts must be weighed by the commissioner in the light of legal principles. The *hearing commissioner makes not only findings of fact, but states his conclusions of law*."

*Earley,* 144 W. Va. at 524, 109 S.E.2d at 433-34 (quoting *Daniel*, 5 S.E.2d at 184-85) (emphasis added). We find that these elements closely mirror the proceedings in the case presently before the Court.

Moreover, the Tennessee Court of Appeals came to the same conclusion when evaluating a non-attorney's conduct before its Water Quality Control Board ("Board"). *See Tenn. Env't Counsel, Inc. v. Tenn. Water Quality Control Bd.*, 254 S.W.3d 396 (Tenn. Ct. App. 2007). In *Tennessee Environmental*, the court found that contested case hearings before the Board constituted """formal, adversarial proceedings where rules of evidence and civil procedure are enforced, the parties file pleadings, often file briefs and motions, present argument[s], examine and cross-examine witnesses, and make opening and closing statements.""" 254 S.W.3d at 403 (Tenn. Ct. App. 2007) (quoting *Tenn. Env't Council, Inc. v. Water Quality Control Bd.* ("*Cumberland Yacht Harbor*"), No. M200502425COAR3CV, 2007 WL 2827470, at *7 (Tenn. Ct. App. Sept. 27, 2007)). It found specifically that where, in such proceedings, "'a party expects to engage in direct or cross-examination of witnesses and rules of evidence are expected to be followed, then the

26

matter is not an informal gathering session wherein information is merely shared, and therefore, legal training, skill, or judgment is essential.'" *Id*. at 407 (quoting *Cumberland Yacht Harbor*, 2007 WL 2827470, at *8). Like the circuit court below, the *Tennessee Environmental* court observed that "'the need for able representation therein becomes even greater when a party seeks judicial review of the administrative proceedings and the rulings therein . . . . because, the appellate review . . . is limited to the record of the administrative proceedings.'" *Id*. (quoting *Cumberland Yacht Harbor*, 2007 WL 2827470, at *7); *accord In re Arons*, 756 A.2d 867, 874 (Del. 2000) (finding lay representation in due process hearings before educational disabilities board constituted unauthorized practice because "[t]he hearings are conducted in a manner typical of contested, adversarial adjudicatory hearings, including the direct and cross-examination of witnesses and the required exchange of witness lists and documents in advance of the hearing."); *Fla. Bar v. Moses*, 380 So. 2d 412 (Fla. 1980) (finding that representation of school board before administrative hearing officer in unfair labor practices proceeding constituted the unauthorized practice of law).

CONDUCT IN THE DHHR BOARD OF REVIEW PROCEEDINGS BELOW

While not dispositive, the foregoing discussion demonstrates that the procedures employed by the Board of Review in this context are highly suggestive of a more traditionally adversarial proceeding, thereby increasing the likelihood that lay advocates may inadvertently engage in the unauthorized practice of law. However, as

27

previously observed, the "decisive factor" in evaluating a claim of the unauthorized practice of law is the character of the act or actions at issue. Syl. Pt. 5, *Earley*, 144 W. Va. 504, 109 S.E.2d 420. DHHR insists that Mr. Sorrent simply questioned C. P. on factual matters, presented materials, and provided a "brief closing summation [which] . . . did not involve any legal analysis, merely further reiteration of the facts." DHHR more specifically attempts to minimize the cross-examination conducted by Mr. Sorrent, characterizing it as a "simple factual presentation[] . . . involv[ing] cross-examination" and which "concerned facts, not legal interpretations or theories." In that regard, DHHR maintains that Mr. Sorrent engaged in nothing more than the "factual presentation" expressly contemplated in our Definition of the Practice of Law. *See supra*, Definition.

We disagree. The Definition makes clear that representation before administrative tribunals by non-lawyers is limited to "presentation of facts, figures or factual conclusions." *Id*. Far in excess of "presentation" of the facts underlying the contested maltreatment finding, Mr. Sorrent utilized both impeachment and cross-examination—both traditional, adversarial litigation tactics—to elicit specific facts and admissions designed to bolster DHHR's legal position that C. P. had subjected A. C. to maltreatment. Mr. Sorrent directly attacked the credibility of C. P. and C. C. and challenged their denials of the content of the investigation; he utilized the assessment to impeach them and vigorously cross-examined them on the veracity of those denials. *See* The W. Va. State Bar Comm. on Unlawful Prac.; Advisory Opinion 94-001, W. Va. Law., August 1994, at 11, 14 (stating that lay representative's "actual participation at hearings

28

before the [workers compensation] Commissioner, and particularly in determining what evidence to introduce and *how and when to cross examination [sic] witnesses*, clearly would fall within the definition of the practice of law." (emphasis added)).

Further, Mr. Sorrent provided a summation to the ALJ that underscored not merely objectively demonstrable facts, but the hotly contested facts he deemed most helpful to DHHR's position. More importantly, Mr. Sorrent argued the legal conclusions which should be drawn from those facts. He expressly advocated that C. P. had committed maltreatment in accordance with West Virginia law, in contravention of the Definition's prohibition on presenting "legal conclusions in respect to such facts and figures." *See supra*, Definition. In fact, the ALJ stated in its findings that based upon "the evidence presented," DHHR "proved by a preponderance of evidence that [C. P.] neglected Child A. C. by failing to provide necessary supervision"—a finding that had not been made in Mr. Myers' assessment, but was argued by Mr. Sorrent at the hearing. Indeed, the ALJ adopted Mr. Sorrent's position wholesale in finding that DHHR substantiated its allegation that "neglect occurred . . . under West Virginia Code § 49-1-3." As the *Earley* court observed with respect to contested adversarial proceedings, "'[f]acts must be weighed . . . in the light of legal principles'" and we find that is precisely what occurred below. 144 W. Va. at 525, 109 S.E.2d at 434 (quoting *Daniel*, 5 S.E.2d at 185).

The gravity of the maltreatment finding—to both C. P. and DHHR—cannot be overstated. As demonstrated in this case, this finding affected C. P.'s interests in the

29

course of guardianship or adoption proceedings—so much so that she engaged in extensive proceedings to have the finding set aside. Clearly, such a finding may also affect an individual's employment and/or licensure prospects. Commensurately, DHHR has a well-established interest in ensuring that such findings are thoroughly investigated, substantiated, and properly registered. Any suggestion that the Board of Review proceedings in this instance constituted an informal, perfunctory review of largely indisputable "facts or figures" defies reality. Rather, the proceedings were plainly those of a contested, adversarial nature, as hallmarked by the use of many of the procedural due process mechanisms afforded our most sacred and valued interests. Mr. Sorrent's conduct in that regard was that of an advocate, utilizing litigation skills and tactics designed to bolster and champion DHHR's findings—both factual and legal. We therefore conclude that the circuit court correctly found that the proceedings below were based upon unlawful process, due to the unauthorized practice of law by DHHR's lay representative, Mr. Sorrent.

We caution that nothing in this opinion is to be read as foreclosing lay representation in administrative proceedings generally, or Board of Review proceedings specifically. As indicated above, the tribunal and proceedings involved in the alleged unauthorized practice give context to the character of the act, which is ultimately decisive. Accordingly, our determination that Mr. Sorrent engaged in the unauthorized practice of law in the proceedings below stems from a holistic assessment of the nature of the

proceedings, the peculiarities of this tribunal, and the particular character of the conduct demonstrated in the administrative proceedings below.[19]

LAY REPRESENTATION OF STATE AGENCIES AND THE COMMITTEE'S 2018 REPORT

Before concluding, we pause to consider a recurrent theme throughout DHHR's brief: that the public protection concerns which typically inform and guide unauthorized practice of law determinations are not present when a *State agency* is represented by non-lawyers in administrative proceedings: "Supervisor Sorrent's actions . . . certainly did not pose any danger to the public" because "[t]he public does not rely on these employees for representation." DHHR appears to argue that the public protection concerns expressed in our caselaw apply only to private individuals—a notion which, in fairness, may be inferred from the language in *Earley* tying its holding to "the protection

---

[19] Similarly, the *Tennessee Environmental* court noted that its holding was not a blanket prohibition on lay representation in administrative proceedings. It clarified that, in that particular tribunal, the devices employed and conduct engaged in would not always come to fruition and therefore would not necessarily implicate unauthorized practice:

> [I]f the letter or petition does not trigger adversarial proceedings, wherein the rules of evidence may be enforced, adversarial pleadings may be filed, or direct and cross examination of witnesses may be involved, but instead sets the stage for a more informal, information gathering proceeding, the corporation's representative need not be a licensed attorney.

754 S.W.3d at 409.

of the public from being advised and represented in legal matters[.]" Syl. Pt. 6, in part, *Earley*, 144 W. Va. 504, 109 S.E.2d 420.

The Committee takes a similar position, best demonstrated by a 2018 report issued by the Committee and attached to its brief in this matter. While the Committee takes the position that no unauthorized practice occurred in the instant case, the 2018 report concludes that "preparation of pleadings, discovery requests, discovery responses *and appearances on behalf of a claimant at the Administrative Law Judge level of state proceedings* is *de facto* the unlawful practice of law[.]" (Emphasis added). We assume that the Committee's stark departure in this case from the conclusions of the 2018 report are due to the limitations placed on its findings that they pertained to non-lawyer representation of claimants, rather than State agencies.

Nonetheless, the 2018 report makes excellent points about the dangers of lay representation in administrative proceedings, primarily based upon the deferential standard of review of such proceedings upon appeal to circuit court and the inability to adduce supplemental or corrected evidence on appeal. Additionally, the report states that, irrespective of regulations permitting such practice, agencies "are not empowered to authorize such representation as the Supreme Court [] is the sole determinant of what constitutes the practice of law[.]"

While we commend and share the parties' understandably heightened concern for protecting the general public from the dangers inherent to lay representation, we cannot agree that lay representation of State agencies—which act in service to the general public—presents zero risk to the public. West Virginia Code § 49-1-105(a) (2015) provides that "[i]t is the purpose of this chapter to provide a system of coordinated child welfare and juvenile justice services for the children of this state. The state has a duty to assure that proper and appropriate care is given and maintained." West Virginia Code § 49-1-105(b)(12) further states that "[t]he child welfare and juvenile justice system shall . . . [p]rotect the welfare of the general public." The investigation of child abuse and neglect serves not only the needs of the specific family and child, but also broader societal interests. The public interest in adequate investigation of such matters and proper handling of the procedural aspects of such investigation is obvious.

More to the point, however, the State's use of lay representatives—who are unbridled by the West Virginia Rules of Professional Conduct—as adversaries to individuals who are commonly self-represented raises particular concern. DHHR represents that individuals appearing before the Board of Review are frequently "under-privileged, pro se" claimants. In that regard, the Rules of Professional Conduct do not merely regulate conduct before specific tribunals or with other lawyers, but command fair dealing with opposing parties generally. Rule 3.4(a) through (c) of the Rules of Professional Conduct states that a lawyer shall not obstruct another party's access to evidence, conceal evidence, falsify evidence, assist false witness testimony, or knowingly

33

disobey the tribunal rules. The Rule further prohibits a lawyer from alluding to irrelevant or unsupportable matters, asserting personal knowledge except when testifying as a witness, or stating personal opinions on the "justness of a cause" or credibility of a witness. Rule 3.4(e). The dangers inherent in these prohibited acts is substantially amplified when the opposing party is self-represented. Further, the Rules of Professional Conduct compel candor toward the tribunal even with regard to purely factual matters—the limited realm in which lay representatives presumably operate. Rule 3.3(a)(1) through (3) of the Rules of Professional Conduct expressly prohibits the making of a false statement, failure to correct a false statement, and the offering of evidence known to be false. By no means do we suggest that lay representatives of DHHR are particularly susceptible to engaging in dishonest or prohibited conduct. However, to the extent that DHHR and the Committee suggest that lay representation of a State agency, as opposed to a private individual, presents a lesser or non-existent danger to the public in proceedings such as these, we firmly disagree.

Finally, we are sympathetic to DHHR's entreaty that the Court issue specific guidance as to precisely what conduct is and is not permissible by DHHR lay advocates in Board of Review proceedings. [20] However, as evidenced by our caselaw on this subject,

---

[20] Amicus curiae West Virginia Department of Transportation makes a similar request. While ostensibly taking no position on whether the specific proceedings below involved the unauthorized practice of law, Department of Transportation expresses its concern that "the state grievance process creates a risk for non-attorney representatives (continued . . .)

the Court has historically refused to issue such sweeping edicts, limiting its holdings to the precise conduct and forum presented. Further, the breadth of matters which are brought before the Board of Review and wide-ranging scope of potential conduct confounds any such attempt at a generalized rule.[21] *See Frieson*, 168 W. Va. at 767 n.2, 285 S.E.2d at 649 n.2 (detailing difficulty in encapsulating conduct constituting unauthorized practice of law and recognizing "'wilderness of single instances'" which commonly results). Our determination is therefore confined to Mr. Sorrent's specific conduct in the particular proceedings and tribunal below.

## IV. CONCLUSION

For the foregoing reasons, we find that the Circuit Court of Webster County committed no error in its conclusion that the administrative proceedings below were based

---

who engage in the unlawful practice of law" and requests that the Court issue a requirement that non-lawyers presenting evidence in administrative proceedings "conform to guidelines similar to the Professional Conduct standards."

The Court is likewise sensitive to the issues and anecdotal occurrences outlined by the Department of Transportation's amicus brief. However, the Court is mindful that the incidents described therein are not presently before the Court and that any request to address or cure those perceived ills are beyond the Court's reach in this matter: "'Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.'" Syl. Pt. 2, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991) (citation omitted).

[21]We are confident that any adjustment necessary to the manner in which DHHR utilizes lay representatives in Board of Review proceedings will be thoughtfully and carefully managed through the close interaction between DHHR and the Office of the Attorney General, as described during oral argument.

upon unlawful procedure occasioned by DHHR's lay representative engaging in the unauthorized practice of law. Finding all other matters moot, we affirm the circuit court's August 9, 2019, order.

Affirmed.